870 A.2d 802

COMMONWEALTH of Pennsylvania, Appellee,

v.

David MEADIUS, Appellant.

Supreme Court of Pennsylvania.

Argued March 2, 2004.

Decided March 29, 2005.

Scott Bruce Rudolf, Esq., Pittsburgh, for David Meadius.

Michael Wayne Streily, Esq., Pittsburgh, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Justice SAYLOR.

We allowed appeal in this matter to determine whether a criminal defendant's rule-based entitlement to a prompt trial was infringed when the Commonwealth filed a criminal complaint, withdrew that complaint, filed a second complaint listing identical charges, and then failed to bring the defendant to trial within one year of the first (but not the second) filing.

On January 16, 2001, the Commonwealth filed a criminal complaint charging Appellant, David Meadius, with, *inter alia*, forgery and insurance fraud. The charges stemmed from allegations that Appellant had obtained an insurance policy using the identity of his deceased father, and then filed a false auto-theft claim with the insurance company. A preliminary hearing was scheduled for February 8, 2001, but that hearing was continued at the Commonwealth's request because the prosecuting attorney was scheduled to attend a continuing legal education (CLE) class that day. The hearing was rescheduled for March 8, 2001, but it had to be rescheduled a second time because a Commonwealth witness failed to appear. Over Appellant's objection, the hearing was postponed until March 22, 2001. On that date, however, the prosecution was again unprepared to proceed due to the absence of two essential Commonwealth witnesses, including the insurance company's special investigator, who failed to attend because his wife had recently given birth. Unwilling to grant another continuance, the district justice stated that he would dismiss the case if the prosecution did not withdraw the charges. Consequently, the Commonwealth withdrew the complaint.

At the conclusion of the March 22 proceeding, the prosecuting attorney instructed Allegheny County Detective Paul Coropal to speak with the absent witnesses and confirm their availability to testify at a future preliminary hearing, as the Commonwealth intended to re-file the same charges against Appellant. Accordingly, the detective contacted the witnesses, who assured him that they would attend the next hearing. Having obtained such assurances, Detective Coropal filed a new complaint on March 27, 2001, charging Appellant with the same offenses included in the January 16 complaint. A preliminary hearing was scheduled for April 12, 2001. On that date, everyone appeared, including all of the Commonwealth's witnesses. Appellant waived the actual hearing and consented to be bound over to court in exchange for a substantial bail reduction. *See* Pa.R.Crim.P. 541. On September 20, 2001, the Commonwealth filed a second criminal information against Appellant containing the same charges as the original com-

plaint, and Appellant was formally arraigned six days later. Thereafter, the case was listed for trial on February 4, 2002, more than one year after the initial complaint was filed on January 16, 2001.

On January 30, 2002, Appellant moved to dismiss the charges with prejudice pursuant to Pennsylvania's prompt trial rule, Pa.R.Crim.P. 600, claiming that the Commonwealth had violated his rights by failing to bring him to trial within one year of the filing of the initial complaint.[1] The Commonwealth opposed the motion, arguing that, for Rule 600 purposes, the one-year period commenced with the filing of the second complaint on March 27, 2001. The common pleas court convened a hearing at which it inquired into the procedural background of the case and the reasons for the multiple delays, taking testimony from both Detective Coropal and the prosecuting attorney. Thereafter, the court granted Appellant's motion and issued an opinion in which it found that the Commonwealth had failed to act with due diligence in bringing Appellant to trial within 365 days of the filing of the first

1. Rule 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(3). This rule is designed to secure a defendant's right to a prompt trial as guaranteed by both the Pennsylvania Constitution, *see* PA CONST art. 1, § 9, and that of the United States, *see* U.S. CONST. amend. VI; *Klopfer v. North Carolina*, 386 U.S. 213, 221, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967) (incorporating the federal mandate to the states). In *Commonwealth v. Hamilton*, 449 Pa. 297, 303–09, 297 A.2d 127, 130–33 (1972), this Court explained the inadequacies of using a balancing test, such as that approved by the United States Supreme Court with regard to the federal provision in *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2191–93, 33 L.Ed.2d 101 (1972), to ensure that the state constitution's speedy trial right is secured, and concluded that there was a need to adopt a rule establishing a definite time period within which defendants must either be brought to trial or released from the threat of prosecution. Subsequently, the court in *Commonwealth v. Whitaker*, 467 Pa. 436, 442, 359 A.2d 174, 176 (1976), emphasized that the prompt trial rule (then Rule 1100) represents the sole means of securing a defendant's state constitutional right to a speedy trial. *See also Commonwealth v. Johnson*, 487 Pa. 197, 202, 409 A.2d 308, 310 (1979) ("Rule 1100 is an administrative method by which we seek to give substance to the constitutional guarantee of a speedy trial for criminal defendants.").

complaint. Thus, the court determined that the Commonwealth was not entitled to the benefit of the second filing date, as the delays in question were solely due to its unjustified failure to comply with the applicable procedural rules. *See* Trial Court op. at 6–7.

In reaching its disposition, the trial court rejected the Commonwealth's argument that the case is controlled by this Court's decision in *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806 (1985). In *Whiting,* the district magistrate granted the Commonwealth's motion for dismissal at the preliminary hearing. The Commonwealth filed a second complaint almost a year later. This Court calculated the time period from the date of the second filing. The trial court here distinguished *Whiting* by observing that that matter involved dismissal by an impartial magistrate, not withdrawal of charges by executive action. It found applicable instead the two-pronged test of *Commonwealth v. Sires,* 284 Pa.Super. 50, 51, 424 A.2d 1386, 1387 (1981), under which the limitations period starts with the second filing only if: (1) the first complaint was properly dismissed by a competent judicial authority; and (2) the record does not reveal any prosecutorial attempt to circumvent or evade the rule's mandate. Presently, the trial court determined that neither prong was satisfied, as the charges were withdrawn, not dismissed, and furthermore, the record indicated prosecutorial circumvention inasmuch as the serial filing occurred due to the Commonwealth's being unprepared to proceed on three separate occasions.

The Superior Court reversed in a memorandum opinion. It read *Whiting* more broadly than the trial court, noting that the initial complaint in *Whiting* was dismissed on the Commonwealth's motion without independent review by the district magistrate, thus prompting this Court to deem it "a voluntary withdrawal of the prosecution by the Commonwealth." *Whiting,* 509 Pa. at 22, 500 A.2d at 807. Therefore, the Superior Court concluded that the trial court had erred by distinguishing *Whiting* on the basis that the present charges against Appellant were withdrawn rather than dismissed. The Superior Court also found that the prosecution had not

attempted to circumvent Rule 600 by withdrawing the first complaint and filing the second, because the latter complaint was filed nine months before the one-year anniversary of the former, and hence, it would be unreasonable to assume that the prosecution undertook these actions with the intention of delaying trial beyond the one-year period.

The parties do not dispute that Rule 600(G) applies to the present case.[2] That rule states, in relevant part:

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated.... If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant....

Pa.R.Crim.P. 600(G).

It is apparent from the above that a trial court must grant a Rule 600(G) motion to dismiss unless it finds that the Commonwealth has exercised due diligence and that the circumstances occasioning the postponement were beyond its control. Furthermore, a reviewing court will only disturb a trial court's ruling on such a motion if it finds an abuse of discretion. The appellate court's scope of review is limited to the findings of the trial court and the evidence on the record of the Rule 600 hearing, viewed in the light most favorable to

---

2. Pennsylvania's prompt trial rule was originally adopted as Rule 1100 in 1973 after issuance of the *Hamilton* decision (*see supra* note 1). It was renumbered Rule 600 in March of 2000. *See* Pa.R.Crim.P. 600, Note.

the prevailing party. *See Commonwealth v. Hill,* 558 Pa. 238, 244, 736 A.2d 578, 581 (1999); *Commonwealth v. Edwards,* 528 Pa. 103, 105, 595 A.2d 52, 53 (1991).

While Rule 600(G) may appear to embrace a fairly straightforward standard for matters in which the relevant charges have only been brought a single time, the proper mode of analyzing these factors has been less evident where identical charges have been filed on two occasions. In particular, the need to determine whether the run date should begin with the first or second filing has caused some courts to discern within the rule's explicit requirement of prosecutorial due diligence an implicit proscription against acting with evasive intent, that is, with an object to circumvent the rule's limitation period. Thus, as noted, the Superior Court has developed a two-pronged test for use in such cases, under which the run date is calculated from the second filing only if the first complaint was properly dismissed by a competent judicial or magisterial authority, and the Commonwealth's actions precipitating dismissal were undertaken without any intent to evade the rule's mandate. *See Sires,* 284 Pa.Super. at 51, 424 A.2d at 1387 (citing *Commonwealth v. Mumich,* 239 Pa.Super. 209, 212, 361 A.2d 359, 361 (1976)).

The *Sires* rule was referenced by this Court in *Commonwealth v. Simms,* 509 Pa. 11, 500 A.2d 801 (1985), in which the perpetrator was initially charged with aggravated assault, but the victim later died, converting the offense into a criminal homicide. The *Simms* court appeared to endorse this two-part standard for some serial-filing situations, but deemed it inapplicable where (as there) subsequent events operate to change the nature of the offense committed. In *Simms,* the court held that the run date began with the second filing which was necessitated by circumstances beyond the prosecution's control. Nine days later, this Court filed its opinion in *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806 (1985). In that matter, the Commonwealth effectively *nolle prossed* a charge of armed robbery because it lacked sufficient evidence to proceed after the victim unexpectedly failed to identify the defendant in a line-up. Later, when the necessary evidence

became available, the Commonwealth re-filed identical charges. Again, this Court held that the run date began with the second filing because there was no intent on the part of the Commonwealth to evade the speedy-trial rule. This result was consistent with that reached in *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979), where prosecution was initially precluded when a crucial witness unexpectedly refused to testify before the grand jury. *See id.* at 201, 204, 409 A.2d at 308, 311. Thus, the *Johnson/Simms/Whiting* line of cases appear aimed at allowing the Commonwealth the benefit of the second date where the withdrawal and re-filing of charges is necessitated by factors beyond its control. This is consistent with the rule's text which specifically adverts to factors beyond the Commonwealth's control.

Presently, the Commonwealth urges this Court to apply the *Sires* rule—as apparently approved in *Simms* and *Whiting*—to affirm the judgment of the Superior Court on the basis that there was no attempt to circumvent the time limitation of Rule 600.[3] In this regard, the Commonwealth stresses that the serial filing in the present case must be evaluated in light of the district justice's ultimatum to either withdraw the charges or face dismissal. It contends that this ultimatum presented the prosecution with a "Hobson's choice," and hence, the situation should be deemed equivalent to dismissal by a judicial or magisterial authority for purposes of the *Sires* rule. Thus, the Commonwealth maintains, this case is qualitatively different from a situation in which the prosecution voluntarily withdraws charges, e.g., through use of the *nolle prosequi* procedure, and then re-files, in an attempt to evade Rule 600's requirements. *See, e.g., Commonwealth v. Whitaker*, 467 Pa. 436, 443, 359 A.2d 174, 177 (1976).

We acknowledge that there is language in *Whiting* that supports the Commonwealth's position that we should dispose of this matter based solely upon the lack of any evidence of bad faith.[4] In particular, that decision states that,

3. The Commonwealth does not allege that Appellant agreed to a trial date after January 16, 2002, and thereby waived his speedy trial rights.

4. In addition to finding that the Commonwealth failed to exercise due diligence, the trial court also concluded that the Commonwealth's

> where a prosecution is voluntarily terminated, and the record shows an attempt to manipulate or evade the requirements of Rule 1100, the speedy trial time period will be computed from the date of the original complaint. But where the record does not show that the Commonwealth's termination of the prosecution was designed to manipulate or evade the requirements of Rule 1100, the time for computing the speedy trial period runs from the date of the later complaint.

*Whiting*, 500 A.2d at 808. Significantly, however, the question of whether the Commonwealth acted with the requisite level of diligence was not at issue in that dispute, and thus, the *Whiting* court apparently did not consider a scenario where the Commonwealth's failure to act diligently precipitates a withdrawal of the complaint followed by a re-filing of identical charges. Therefore, the above language cannot properly be lifted out of the context of *Whiting* and elevated to the status of a judicial rule to be applied in every case involving serial filings.[5]

Rather, as noted, the rule dictates that a timely-filed motion be granted unless the court finds that the Commonwealth "exercised due diligence and that the circumstances occasioning the postponement were beyond [its] control." Pa. R.Crim.P. 600(G); *see Hill*, 558 Pa. at 263, 736 A.2d at 592 (denying a Rule 1100 motion where the Commonwealth exer-

---

actions were undertaken in an attempt to circumvent the rule. *See* Trial Court op. at 6. We cannot agree with this assessment. As discussed, the Commonwealth had little choice but to withdraw the charges given the district justice's ultimatum, and it could not have known in March of 2001 that the trial would probably not occur before mid-January of 2002. This does not alter our ultimate disposition, however, because, as explained *infra*, the Commonwealth's lack of due diligence provides an independent basis to grant a Rule 600(G) motion.

5. The Commonwealth also directs our attention to *Commonwealth v. Navarro*, 499 Pa. 279, 453 A.2d 308 (1982), in which the prosecution withdrew assault charges after the victim died, but then later reinstated them although no new evidence had been gathered. There, the Commonwealth was allowed the benefit of the second filing date, as there was no apparent evasive intent by the prosecution. Like *Whiting*, however, *Navarro* is distinguishable from the present matter in that it does not involve any issue pertaining to prosecutorial due diligence.

cised reasonable diligence); *Commonwealth v. Browne,* 526 Pa. 83, 90, 584 A.2d 902, 906 (1990) (granting a Rule 1100 motion where the Commonwealth did not act diligently); *Edwards,* 528 Pa. at 111–12, 595 A.2d at 56 (same). *See generally Browne,* 526 Pa. at 89, 584 A.2d at 905 ("The test to be met is whether the Commonwealth's efforts to bring the defendant to trial were reasonable and pursued with diligence."); *Commonwealth v. Matis,* 551 Pa. 220, 230, 710 A.2d 12, 17 (1998) ("The Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time."). Here, while the prosecution did not act with evasive intent, *see supra* note 4, the Commonwealth concedes that the delays in question were all caused when its prosecuting attorney or its witnesses were absent attending to personal matters or for unexplained reasons. *See* Brief at 7–8, 26. Further, when Detective Coropal phoned the key witnesses to ensure their presence in court, they all appeared as scheduled. *See* N.T. 2/5/02 at 26–27, 44. The Commonwealth offers no explanation as to why these phone calls could not have been made in February or March of 2001, or why the prosecution did not take other measures to secure the attendance of its witnesses on March 22, 2001, after the preliminary hearing scheduled for March 8 was continued due to the absence of witnesses. *Cf. Edwards,* 528 Pa. at 108, 595 A.2d at 54 (finding a lack of prosecutorial due diligence, for purposes of the prompt trial rule, where the Commonwealth did not take reasonable steps to ensure the presence of essential witnesses at trial). Nor do we minimize an attorney's duty to fulfill his CLE requirements. However, there is no indication that the prosecutor could not have altered his plans so as to attend a different CLE class once the scheduling conflict became known. For these reasons, we cannot say that the trial court erred in charging the Commonwealth with responsibility for the multiple delays leading up to the withdrawal of charges against Appellant.

Rule 600, as noted, does not speak explicitly to the manner in which serial filing cases should be handled. While this Court has determined that the Commonwealth may not obtain the benefit of the second date where the re-filing is intended

to evade the rule's time limits, *see Whitaker,* 467 Pa. at 443, 359 A.2d at 177, it has never faced the distinct question of whether the same result should obtain where the serial filing is brought about because the prosecution does not exercise due diligence. We believe that it should. The rule's focus upon allowing the prosecution time extensions only where it has acted diligently and where the delays in question were caused by factors beyond its control supports an interpretation whereby it must forego the benefit of a second filing date when these conditions are not met. Indeed, a contrary result would undermine the rule's own facial requirements directed to prosecutorial diligence, as well its objectives, which include advancing society's interests in seeing those accused of crime prosecuted in a timely manner, *see Johnson,* 487 Pa. at 205 n. 4, 409 A.2d at 311 n. 4, as well as ensuring the efficient management of criminal cases as a means of avoiding substantial backlogs, *see Commonwealth v. Hamilton,* 449 Pa. 297, 308, 297 A.2d 127, 133 (1972).

Since the trial court specifically found that the Commonwealth failed to proceed with due diligence, and that such failure was the cause of its inability to bring Appellant to trial within the applicable time period, and because there is nothing in the record to indicate that this finding was erroneous,[6] we are unable to conclude that the trial court abused its discretion in granting Appellant's Rule 600(G) motion to dismiss.

Accordingly, the judgment of the Superior Court is reversed, and the order of the Court of Common Pleas of Allegheny County is reinstated.

Justice EAKIN files a dissenting opinion in which Justice CASTILLE and Justice NEWMAN join.

Justice EAKIN, dissenting.

My colleagues accept appellant's contention that his rights were violated because he was not tried within a year of the

---

6. In this regard, it is worth noting that the Commonwealth does not offer any explanation as to why it waited more than five months to file a criminal information in the common pleas court once the case was bound over for trial in mid-April of 2001.

"initial complaint," not the existent complaint. As there is no authority in Rule 600 for calculating from a nonexistent complaint, I must respectfully dissent.

Rule 600 deals with "the" complaint, and there is but one complaint in this case. It was filed March 27, 2001, not in January of that year; the prior complaint had been withdrawn and formed no part of the present proceedings. The rule does not mention or give vitality to initial, subsequent, previous, last or latest complaints. It states *the* complaint, which necessarily means the complaint to which appellant finds himself susceptible. The instant charges were brought by the instant complaint. Appellant waived the preliminary hearing on the charges brought in the March complaint. It is the ongoing complaint which instituted the charges that appellant moved to dismiss. This complaint is the only one relevant to any calculation or motion under our rules.

Rule 600 does not speak to, much less require, a due diligence inquiry unless and until the deadline (created by filing the existent complaint) has elapsed and a defendant files a motion to dismiss the charges (created by filing the existent complaint). An inquiry into due diligence is not authorized by the rule where, as here, 365 days from the complaint's filing did not elapse. Pennsylvania Rules of Criminal Procedure 600(G) states: "For defendants on bail *after the expiration* of 365 days" the motion is available. *Id.* (emphasis added). 365 days from what? From "the date on which *the complaint* is filed." *Id.,* 600(A). This motion is not available by counting from the filing of a withdrawn and nugatory complaint—by the very language of Rule 600, an irrelevant date cannot affect the time for the dismissal motion or the subsequent due diligence examination.

> [W]here the record does not show that the Commonwealth's termination of the prosecution was designed to manipulate or evade the requirements of Rule [600], the time for computing the speedy trial period runs from the date of the latter complaint.

*Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806, 808 (1985). The latter complaint is the only complaint in the contemplation of the rule.

Simply put, when this motion was filed in January, 2002, appellant was not a defendant "on bail after the expiration of 365 days" and he was not authorized by Rule 600 to move for dismissal on grounds of its violation. Appellant's motion to dismiss was premature and cannot be the basis for the relief he seeks, much less the new jurisprudence announced by my colleagues.

The majority's concerns about potential abuse of Rule 600 by serial filings are legitimate. Clearly, governmental actions preceding the relevant complaint may trigger constitutional considerations that warrant relief,[1] but such relief is not within the contemplation of Rule 600 itself. Other grounds for relief may exist based on inaction before trial, but relief for violation of Rule 600 is confined to the specific relief set forth in Rule 600 itself.

Further, there was no scenario of abuse here, nor have we faced a spate of cases alleging such abuse. This prosecutor tried numerous times to secure the presence of his witnesses, and withdrew the first complaint when warned by the district justice that dismissal was imminent; he refiled charges five days later. The trial court acknowledged this promptitude, commenting: "It's not like [the prosecutor] came here on the 364th day." N.T. Rule 600 Hearing, 2/4/02, at 12. Even if the matter could have been expedited, this clearly was not an effort to harass or prejudice the accused, and the withdrawal and refiling clearly was not done to avoid Rule 600.

Diligence and expeditious scheduling is the mandate of the rule to be sure, but court and counsel must know what the true run date is so they may schedule accordingly. Calculating from the date on *the* complaint is clear, but under the analysis of my colleagues, courts and counsel must now calcu-

---

1. For example, the *"Sires* rule" precludes prosecutorial tactics designed to circumvent the rule. Likewise, repeated arrests designed to harass, or which prejudice the accused will not be tolerated. *See* Comment to Pa.R.Crim.P 544, and cases cited therein.

late and schedule based on an uncertain or unknown date of a complaint long withdrawn and not part of the record.

To make the calculation from a dismissed filing, as my colleagues do, is not proper under the clear language of the rule. It is not warranted by a need to close loopholes in the existing caselaw, nor is there evidence of abuse of the rule's purpose in this case or in general. The result creates needless uncertainty in application. This Court's current pronouncements of Rule 600's requirements for refiled complaints are plain, curtail abuse, and provide relief when the rule is violated.

The majority, while positing a thoughtful analysis, does not follow the express language of Rule 600, resulting in complication of a calculation that was otherwise sure and simple, without appreciable benefit to court, counsel, or accused. In short, the majority is fixing something that is not broken. Accordingly, I respectfully dissent.

Justice CASTILLE and Justice NEWMAN join.