J-S34036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FERNANDO REAL, | |
| Appellant | No. 2514 EDA 2016 |

Appeal from the PCRA Order July 13, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0207721-2004

BEFORE:  BOWES, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JULY 07, 2017**

Appellant, Fernando Real, appeals *pro se* from the denial of his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, as untimely, with no exception to the jurisdictional time bar applicable.  Appellant asserts hearsay recantation evidence as an exception to the jurisdictional time-bar.  We affirm.

We derive the facts of the case from the PCRA court's Rule 1925(a) opinion, the hearing held on May 12, 2016, and our independent review of the record.  On September 11, 2002, Appellant fatally shot an unarmed man, Levon ("Boo") Wilson, twelve times, over a dispute in a group dice

_____

[*] Retired Senior Judge assigned to the Superior Court.

game.[1] Police who were nearby heard the gunshots and went to investigate. They pursued Appellant but he evaded capture and was a fugitive for a year until he was apprehended at a motel in New Jersey, on his way to Puerto Rico. At least four eyewitnesses (Ronald Milburn, Marquise Nixon, Brian Perry, and Brian Heard) gave statements to the police identifying Appellant as the shooter.

Notably for this appeal, Milburn testified at the preliminary hearing against Appellant, but subsequently suffered traumatic brain injury in a motor vehicle accident. Based on medical evaluation, the trial court determined that he was unavailable to testify, and his testimony from the preliminary hearing was read into the record. Heard apparently also testified against Appellant at the preliminary hearing (after giving an inculpatory statement to the police), but the Commonwealth could not locate him at the time of trial, and the trial court precluded reference to his prior inculpatory statement and testimony to the jury.[2]

On June 28, 2005, the jury convicted Appellant of first-degree murder and possessing an instrument of crime. (**See** N.T. Trial, 6/28/05, at 33).

_____

[1] Wilson placed a bet without having the money to cover it. Appellant was the "banker" of the craps game.

[2] In fact, defense trial counsel cited the failure of the Commonwealth to call Heard as proof of Appellant's innocence. The PCRA court also notes that Heard testified against Appellant in a separate double murder trial (of Marcus Herbert and Byron Story) in 2014. (**See** N.T. Hearing, 5/12/16, at 12; **see also infra** at *5).

The court sentenced him to a term of life in prison for the murder conviction, with a concurrent sentence of not less than two and one-half nor more than five years' incarceration for possessing an instrument of crime. All his previous appeals were unsuccessful.[3]

On January 26, 2015, Appellant filed the instant second PCRA petition, *pro se*, seeking a new trial based on claims of newly-discovered facts ("evidence"). The petition included two affidavits.

He first attached an affidavit dated October 8, 2014 from "Margarita Debnam."[4] In the affidavit, Ms. Debnam claimed that Edith Livingston, mother of eyewitness Ronald Milburn, told her (Ms. Debnam) in **February of 2014** that Mr. Milburn had told his mother (Ms. Livingston) in **September**

---

[3] On March 4, 2009, this Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal on October 7, 2009. (**See Commonwealth v. Real**, 972 A.2d 560 (Pa. Super. 2009), *appeal denied*, 982 A.2d 65 (Pa. 2009), *cert. denied*, 559 U.S. 1053 (2010)). On February 26, 2010, while his direct appeal was still pending, Appellant filed a premature petition for PCRA relief. The PCRA court appointed counsel, who filed an amended petition, but on July 16, 2012, Appellant filed a motion to proceed *pro se*. He also filed an amended petition, raising four claims of ineffective assistance of counsel. On September 13, 2012, the PCRA court conducted a **Grazier** hearing and granted Appellant permission to proceed *pro se*. **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). On May 3, 2013, the PCRA court dismissed his first petition after an evidentiary hearing. This Court affirmed the order of dismissal on August 27, 2014; our Supreme Court denied allowance of appeal on January 21, 2015.

[4] Although it is not specified in the affidavit itself, the Commonwealth persuasively argues from the evidence of record that "Margarita Deb**nam**" is actually Appellant's mother, a/k/a Margarita Polo. Appellant's stepfather was identified at trial as Tayo "Deb**man**." (**See** Commonwealth's Brief, at 6-7 n.3).

**of 2003** that he was not present during the shooting. According to the text of the affidavit, Mr. Milburn told his mother that he testified against Appellant because he (Milburn) was on probation for drug offenses and violation of the Uniform Firearms Act; he allegedly claimed that he wanted to avoid a violation of probation and to seek favor with law enforcement by cooperating in the Wilson murder investigation.

Additionally, according to the Debnam affidavit, Milburn wanted to get back at Appellant for dating his sister, Elise Livingston, a more delicate version of Appellant's own explanation, that he had taken Ms. Livingston's virginity. (**See** Debnam affidavit; **see also** Appellant's Brief, at 10).

Ms. Debnam further claims that Ms. Livingston said she told all this to Assistant District Attorney Mark Gilson in January of 2004, but he rebuffed her and threatened to retaliate against her family if she tried to testify. Unfortunately for the reliability of this narrative, Mr. Gilson apparently was not assigned to this case until about a year later.

Appellant also presents a second affidavit from another eyewitness, Brian Heard, dated and notarized on June 11, 2015. Heard also identified Appellant to the police, but the Commonwealth could not locate him for trial, so, as already noted, his identification of Appellant was not presented to the jury at trial.

In the affidavit attributed to Heard, he claims he told the police he only heard gunshots, and did not see Appellant shoot Wilson. Furthermore,

Heard describes multiple conversations he had with both Milburn (in September of 2002) and the assistant district attorney (in May of 2005). Heard relates that after discussion with Milburn, they both decided to adopt Milburn's strategy of blaming Appellant for Wilson's murder in hopes of improving their own probationary situations.

Heard also relates that Milburn explained he never liked Appellant and wanted to retaliate for the compromise of Elise. Heard claims he told all this to the assistant district attorney, "a short white man," who again threatened retaliation. (Heard Affidavit, 6/11/15).

As already mentioned, Mr. Milburn testified at the preliminary hearing but later the same year (August 30, 2004) suffered traumatic brain injury in a motor vehicle accident.

Of note for Appellant's third issue on appeal, independently, he was also convicted of a double murder (of Marcus Herbert and Byron Story) and robbery, which occurred two days before the murder of Wilson.

On July 13, 2016, the PCRA court dismissed Appellant's petition, following a hearing. This timely appeal followed.

Appellant presents three questions for our review:

> A. Whether the PCRA court committed error when it ruled that Brian Heard's recantation was not newly discovered evidence even though the Commonwealth concealed it from [A]ppellant?

> B. Whether the PCRA court committed error when it ruled that Pa.C.S.A. § 9545(b)(1)(ii) requires newly discovered

evidence to be admissible in order for the PCRA court to have jurisdiction over the claim?

C. Whether the PCRA court committed error when it ruled that it was introduced during trial that the murder weapon was used days before the murder to kill two other people, therefore this is not newly discovered evidence; when the record confirms it was not revealed during trial, it was revealed nine years after trial?

(Appellant's Brief, at 2).

On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error. **Commonwealth v. Breakiron**, 566 Pa. 323, 781 A.2d 94, 97 n.4 (2001). Our review of questions of law is *de novo*. **Commonwealth v. Fahy**, 598 Pa. 584, 959 A.2d 312, 316 (2008).

**Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013), *cert. denied*,

134 S. Ct. 639 (2013).

"Questions regarding the scope of the statutory exceptions to the PCRA's jurisdictional time-bar raise questions of law; accordingly, our standard of review is *de novo*". **Commonwealth v. Chester**, 586 Pa. 468, 895 A.2d 520, 522 n.1 (2006). "As a general proposition, an appellate court reviews the PCRA court's findings to see if they are supported by the record and free from legal error." **Commonwealth v. Reyes**, 582 Pa. 317, 870 A.2d 888, 893 n.2 (2005). This Court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party, in this case, the Commonwealth. **See, e.g., Commonwealth v. Duffey**, 585 Pa. 493, 889 A.2d 56, 61 (2005); **Commonwealth v. Meadius**, 582 Pa. 174, 870 A.2d 802 (2005). In addition, "[t]he level of deference to the hearing judge may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined." **Commonwealth v. Reaves**, 592 Pa. 134, 923 A.2d 1119, 1124 (2007) (citations omitted).

- 6 -

*Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008).

We note the timeliness of a PCRA petition implicates the jurisdiction of this Court and the PCRA court. *Commonwealth v. Williams*, 35 A.3d 44, 52 (Pa. Super. 2011) (citation omitted), *appeal denied,* 616 Pa. 467, 50 A.3d 121 (2012). "Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition." *Id.* The PCRA "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar [.]" *Commonwealth v. Watts*, 611 Pa. 80, 23 A.3d 980, 983 (2011) (citation omitted). This is to "accord finality to the collateral review process." *Id.* "A petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), is met." *Commonwealth v. Harris*, 972 A.2d 1196, 1199–1200 (Pa. Super. 2009). The act provides, in relevant part, as follows.

## § 9545. Jurisdiction and proceedings

\* \* \*

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

\* \* \*

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

\* \* \*

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

\* \* \*

42 Pa.C.S.A. § 9545(b).

\* \* \*

Additionally, the deference normally due to the findings of the PCRA court is accentuated where what is involved is recantation testimony[.]

\* \* \*

Furthermore, the PCRA court as factfinder is in a superior position to make the initial assessment of the importance of recantation testimony to the outcome of the case.

***Commonwealth v. Medina***, 92 A.3d 1210, 1215-19 (Pa. Super. 2014), *appeal dismissed as improvidently granted*, 140 A.3d 675 (Pa. 2016) (internal quotation marks, citations and brackets omitted).

Here, preliminarily, we note that Appellant misapprehends and misstates the law applicable to the review of after-discovered evidence.

Citing ***Commonwealth v. Brown***, 111 A.3d 171 (Pa. Super. 2015), *appeal denied*, 125 A.3d 1197 (Pa. 2015), for an isolated proposition, out of context, Appellant maintains that the new facts exception at Section 9545(b)(1)(ii) does not require any merits analysis of an underlying after-discovered-evidence claim. (***See*** Appellant's Brief, at 9) (citing ***Brown***, ***supra*** at 178; ***see also id.*** at 177-79).

While this point as narrowly stated is literally true, it remains true that "a petitioner must still allege and prove that (a) the existence of facts that were unknown to him and (b) his exercise of due diligence in discovering

those facts." ***Brown***, at 179. Here, Appellant failed to satisfy the two requirements for this exception.

Furthermore, it is well-settled that a claim based on inadmissible hearsay "does not meet § 9545(b)(1)(ii)'s exception because a claim based on inadmissible hearsay does not implicate this exception." ***Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1269–70 (Pa. 2008), *cert. denied*, 555 U.S. 916 (2008).

Here, both affidavits are rife with rank hearsay: what Milburn purportedly told Ms. Livingston; what Ms. Livingston purportedly told Ms. Debnam about what Milburn told her (double hearsay); what Milburn purportedly told Heard; what Heard told Milburn; what Heard purportedly told the assistant district attorney about what Milburn told him (double hearsay again), and all for the truth of the matters asserted, with no exception to the hearsay rule pleaded or proven.

"A claim which rests exclusively upon inadmissible hearsay is not of a type that would implicate the after-discovered evidence exception to the timeliness requirement, nor would such a claim, **even if timely**, entitle Appellant to relief under the PCRA." ***Commonwealth v. Yarris***, 731 A.2d 581, 592 (Pa. 1999) (emphasis added).

Moreover, we agree with the PCRA court that Appellant's bare declaration of bald ignorance does not meet the burden to plead and prove why the information now proffered as after-discovered "evidence" could not

have been known and obtained earlier by the exercise of due diligence. The PCRA court properly determined that Appellant's petition is untimely with no exception to the jurisdictional time-bar pleaded and proven.

Finally, in Appellant's third claim, he alleges that the murder weapon discussed at the trial for the **other** murders (of Marcus Herbert and Byron Story) raised the prospect of another perpetrator. Therefore, he posits, it constituted newly discovered evidence in this case. (**See** Appellant's Brief, at 11-12). This claim is particularly egregious. Appellant neglects to mention that **he** was convicted of both of those murders, as well as this one. (**See** N.T. PCRA Court Hearing, 5/12/16, at 4-5, 10); (**see also Commonwealth v. Real**, (Pa. Super. filed November 20, 2015), 134 A.3d 499 (unpublished memorandum), *appeal denied*, 138 A.3d 4 (Pa. 2016)) (footnote omitted).

Appellant's second PCRA petition is untimely with no valid exception to the jurisdictional time bar pleaded and proven. Moreover, we note for completeness and clarity that the PCRA court determined that none of Appellant's substantive claims would merit relief. (**See** PCRA Court Hearing, 5/12/16, at 12-13).[5]

---

[5] We also note that on review of Appellant's first PCRA petition, this Court agreed with the original PCRA court that the evidence against Appellant was overwhelming. (**See Commonwealth v. Real**, No. 1495 EDA 2013, unpublished memorandum at *5 (Pa. Super. filed August 27, 2014)).

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/7/2017