J-S45036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LEQUINN JAQUILLE BUTTS | : | |
| | : | |
| Appellant | : | No. 359 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 21, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0000317-2023

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: MARCH 21, 2025**

Lequinn Jaquille Butts appeals from the judgment of sentence imposed on his convictions for possession of a controlled substance, possession of a small amount of marijuana, possession of drug paraphernalia, and false identification to law enforcement authorities.[1] Butts argues the court erred in denying his Rule 600 motion and challenges the sufficiency of the evidence supporting his conviction for false identification to law enforcement authorities. We affirm the court's denial of the Rule 600 motion, but reverse Butts' conviction for false identification to law enforcement authorities. We vacate the judgment of sentence and remand.

The underlying facts are as follows.

---

[1] **See** 35 P.S. §§ 780-113(a)(16), (a)(31)(i), (a)(32); 18 Pa.C.S.A. §§ 4914(a), respectively.

[Trooper Jose Garcia] and his partner were working together on November 20, 2021. At approximately 1:20 a.m., they observed a vehicle swerving on Interstate 83. [Trooper Garcia activated his lights and siren and pulled the vehicle over.] He approached the vehicle on the driver side while his partner approached on the passenger side. He noticed, based on his training and experience, several factors such as air fresheners, ripped up carpet, and altered door panels that could be indicators of drug activity. The driver identified himself as Chad Fee[s]er.[2] Mr. Fee[s]er was smoking a cigarette, which the trooper suspected might be to mask a smell inside the vehicle. Mr. Fee[s]er was asked to put out the cigarette, and he placed it inside a cigarette carton. At that time, Trooper Garcia testified that he observed a white crack rock in the cigarette carton. Trooper Garcia then asked Mr. Fee[s]er to exit the vehicle. Mr. Fee[s]er identified the passenger in the vehicle as the vehicle owner. The passenger was identified [in court] as [Butts]. [Butts] was asked to exit the vehicle.

Trial Court Opinion, 5/7/24, at 3-4 (unpaginated) (citations to N.T. omitted).

Butts told Trooper Garcia his name was LeQuinn. N.T., Trial, 12/12/23-12/13/23, at 162. Trooper Garcia brought Butts inside the patrol car. *Id.* at 160. He told Butts that Feeser told him the vehicle belonged to Butts and asked Butts for consent to search the vehicle. *Id.* at 161. Trooper Garcia told Butts, "You're not under arrest, there's nothing along those lines." Cmwlth.'s Ex. 1 at 13:35-13:37. He read Butts a "consent to search form," which is "a form that [Pennsylvania State Police ("PSP")] has given us that explains the rights for an individual if [he] want[s] to search their vehicle." N.T., Trial, at 161. Trooper Garcia also explained the form to Butts in layman's terms. *Id.*

_____

[2] Although the notes of testimony and the trial court opinion spell this name as "Feezer," according to the affidavit of probable cause, the last name of the driver of the car was "Feeser," not "Feezer." *See* Affidavit of Probable Cause, sworn 11/14/22, at 1-2; *see also* Cmwlth.'s Ex. 1, Motor Vehicle Recording, at 5:24-5:27.

- 2 -

He assured Butts, "Nothing's wrong with the vehicle." Cmwlth.'s Ex. 1 at 13:46. Butts gave verbal consent to search. N.T., Trial, at 162.

Trooper Garcia searched the vehicle but could not locate the crack rock. He interviewed Feeser again, and then spoke to Butts again. Trooper Garcia again asked Butts for his name, saying, "I need your name. Real name. Don't bullshit me." Cmwlth.'s Ex. 1 at 42:06-42:10. This time, Butts gave a false name – "Mark Anthony." *Id.* at 42:11-42:12. Trooper Garcia added, "Cause if you bullshit me, you're getting charged." *Id.* at 42:13-42:14. Butts repeated the false name – "Mark Anthony Martin," and gave a false birthdate. N.T., Trial, at 167.

Trooper Garcia checked the information Butts had given him and, based on a PennDOT photo he retrieved, suspected Butts had used a false name. *Id.* at 167-68. Trooper Garcia asked Butts if he had taken the white crack rock he had seen before the search. Butts denied knowledge of the crack rock, and stated he had let Trooper Garcia search the vehicle because "there was nothing in the vehicle." *Id.* at 170.

Due to the weather, Trooper Garcia asked Feeser to sit with Butts in the back of the patrol car. He told them both, "You guys are not under arrest right now. Please sit in the backseat of my car so you guys can stay warm while I conduct my investigation." *Id.* at 171. Trooper Garcia decided to obtain a warrant and conduct a second search of Butts' car in a more controlled environment, so he could look for "hidden compartments or traps." *Id.* at 174; *see also id.* at 171-72. He arrested both Feeser and Butts. *Id.* at 174. When

he searched Butts, he recovered a plastic bag containing 14 grams of cocaine. *Id.* at 175-78.

That day, Trooper Garcia filed a complaint charging Butts with possession of a controlled substance with intent to deliver, possession of a controlled substance, possession of a small amount of marijuana, possession of drug paraphernalia, false identification to law enforcement authorities, tampering with or fabricating physical evidence, and driving on roadways laned for traffic. The court scheduled a preliminary hearing for December 27, 2021 – just over one month from when the complaint was filed. Trooper Garcia, who was the affiant, did not appear for the preliminary hearing, and the district court dismissed the complaint.

Trooper Garcia refiled the charges nearly one year later, in November 2022. The case proceeded and was scheduled for trial the following year, in December 2023. The day before trial, Butts filed a motion to dismiss based on Rule 600. Butts argued the Commonwealth had not exercised due diligence in prosecuting the first complaint or in refiling the charges.

The court held a hearing immediately preceding trial. Trooper Garcia testified that he had been unable to attend the preliminary hearing on the first complaint because he had recently tested positive for COVID and the policy of the PSP at the time prohibited him from working for 10 days. N.T., Rule 600 Hearing, 12/12/23, at 16-17. His caseload fell to his scheduling sergeant, who should have requested a continuance of the preliminary hearing. The sergeant failed to do so, which resulted in the case's dismissal. *Id.* at 17-18, 32.

Trooper Garcia returned to work shortly thereafter, in January 2021. *Id.* at 30. Approximately four months after the case had been dismissed, in April 2022, Trooper Garcia was reviewing his cases and discovered Butts' case had been dismissed. *Id.* at 17-18, 30-31. Two months later, in June 2022, Trooper Garcia requested written approval from the office of the district attorney to refile the charges. *Id.* at 18-19; *see also* Pa.R.Crim.P. 544(A). The Assistant District Attorney ("ADA") gave Trooper Garcia a "refile letter" shortly thereafter. N.T., Rule 600 Hearing, at 20. Trooper Garcia filed the second complaint five months after receiving the refile letter, in November 2022. *Id.* at 21.

Trooper Garcia explained that the periods of delay occurred because, once he filed the first complaint, this case had been moved from his list of pending cases to his list of open cases. *Id.* at 34. Trooper Garcia testified that his pending cases take priority; he had a caseload of 140 cases at the time; and he had been trying to catch up from being out of work due to COVID. *Id.* at 22-23, 33-37. Additionally, the PSP tracking system only requires case reports to be supplemented every 30, 60, or 90 days. *Id.* at 35. Trooper Garcia stated that in April 2022, he discovered the first complaint had been dismissed and that he would need to request a refile letter. *Id.* at 37. He wrote this in a supplemental report, and the matter returned to the bottom of his queue for another 60 days, until the case was flagged as due for another supplemental report. *Id.* at 37-38. He then requested the refile letter, in June 2022. *Id.* at 39. After he did so, the matter again went "to the bottom of [his]

workstation" until another supplemental report was due. *Id.* at 41. He filed the second complaint in November 2022.

The court denied the motion, relying on **Commonwealth v. Peterson**, 19 A.3d 1131 (Pa.Super. 2011) (*en banc*). **See** Trial Ct. Op. at 3. The court found the Commonwealth diligently prosecuted the initial complaint. It observed that after Trooper Garcia filed the initial complaint, "the case proceeded to the preliminary hearing in just a little over a month from the offense date. It was dismissed when the affiant was unable to attend the hearing due to COVID, a circumstance beyond the control of the Commonwealth." *Id.* at 6.

In addition, regarding the period between the dismissal of the first complaint and the filing of the second complaint, the court observed that Trooper Garcia "testified that he was prioritizing his cases and attempting to move this case forward when it was flagged in his system." *Id.* at 7. The court found "there was no misconduct or intent to circumvent the speedy trial rule" and that it should not "place unrealistic expectations on a police force struggling with high caseloads and personnel missing work due to COVID and having to catch up." *Id.*

The jury convicted Butts of possession of a controlled substance, possession of drug paraphernalia, and false identification to law enforcement.[3]

_____

[3] The jury found Butts not guilty of possession with intent to deliver and tampering with physical evidence. The Commonwealth withdrew the traffic offense.

The court found Butts guilty of possession of a small amount of marijuana.[4] The court sentenced Butts to an aggregate of one to two years' incarceration followed by one year of probation. This appeal followed.

Butts raises two issues:

[(1)]: Did the lower court abuse its discretion in denying Lequinn Butts' Motion to Dismiss Pursuant to Pa.R.Crim.P. 600 where the Commonwealth needlessly delayed almost a year before refiling a complaint that was identical to an original complaint that had been dismissed because the affiant neither attended nor rescheduled the preliminary hearing?

[(2)]: Was the evidence insufficient to prove Butts guilty beyond a reasonable doubt of false identification to law enforcement where, before incorrectly identifying himself, Butts was never told he was the subject of an official investigation?

Butts' Br. at 4 (suggested answers omitted).

In his first issue, Butts argues the court erred in denying his Rule 600 motion. Butts argues that the controlling date for Rule 600 purposes is the date the Commonwealth filed the initial complaint. *Id.* at 17-19 (citing *Commonwealth v. Meadius*, 870 A.2d 802 (Pa. 2005), and *Commonwealth v. Womack*, 315 A.3d 1229 (Pa. 2024)). He contends this Court's holding in *Peterson* - that the date of the filing of the second complaint is controlling, so long as the first complaint was prosecuted with due diligence – "is of dubious vitality in light of the Pennsylvania Supreme Court's decision in *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021), holding that the Commonwealth must exercise due diligence throughout the

---

[4] Prior to trial, Butts stipulated that he had possessed a small amount of marijuana. N.T., Trial, at 123.

life of a case." ***Id.*** at 13; ***see also*** Butts' Reply Br. at 2 (citing ***Commonwealth v. Lear***, 325 A.3d 552 (Pa. 2024)).

Butts argues that the Commonwealth must act diligently in the filing and prosecution of both complaints because the purpose of the speedy trial rule is to limit the anxiety and concern accompanying a public accusation. Butts' Br. at 20-22. He argues that where the initial complaint is dismissed merely for a witness's failure to appear, and the Commonwealth later refiles the same charges, the defendant has never been relieved of the anxiety and concern accompanying the charges. He contrasts this situation from situations where the initial complaint is dismissed for want of evidence or the Commonwealth files different charges in the second complaint.

Butts argues that here, the Commonwealth did not exercise due diligence between the dismissal of the original complaint and the filing of the second complaint. He contends that in taking nearly four months to realize the charges had been dropped, taking another two months before requesting permission to refile the charges, and then waiting another five months after receiving that permission to file the second complaint "cannot be viewed as due diligence." ***Id.*** at 25. Butts argues it is the Commonwealth's duty to ensure that systems are in place to bring defendants to trial on time.

Alternatively, Butts argues that under ***Peterson***, the date of the first complaint is controlling here because the Commonwealth did not exercise due diligence in prosecuting that complaint. Butts points out that the case was dismissed because the police failed to request a continuance when Trooper

Garcia became unavailable for the preliminary hearing, and the police gave no explanation for this failure. Butts points out that in **Meadius**, the Pennsylvania Supreme Court rejected the argument that the date of the filing of the second complaint controls in the absence of bad faith, instead holding that the first complaint is controlling whenever "the serial filing is brought about because the prosecution does not exercise due diligence." Butts' Reply Br. at 2-3.

We review a trial court's decision on a Rule 600 motion for an abuse of discretion. **Commonwealth v. Leaner**, 202 A.3d 749, 765-66 (Pa.Super. 2019). We must view the evidence presented at the motion on the hearing "in the light most favorable to the prevailing party." **Commonwealth v. Watson**, 140 A.3d 696, 698 (Pa.Super. 2016).

Rule of Criminal Procedure 600 "has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases." **Womack**, 315 A.3d at 1237 (citation omitted). Pursuant to Rule 600(A), the Commonwealth must bring the defendant to trial within 365 days of the date it filed the written complaint. **See** Pa.R.Crim.P. 600(A)(2)(a). Delay that is attributable to the court, or the defendant, or other delay that occurs despite the Commonwealth's exercise of due diligence, is excluded from the 365-day calculation. **Id.** at 600(C)(1)-(2).

Here, the parties agree with the exclusion of certain periods such that they agree the Commonwealth brought Butts to trial within 365 includable days of when it filed the second complaint. They disagree on whether the time

attributable to the first complaint, or the period between the filing of the two complaints, requires dismissal.

The comment to Rule 600 states that where the Commonwealth has withdrawn a first complaint and then filed a second, the date of the second complaint is controlling when (1) the Commonwealth needed to refile the charges due to factors beyond its control, (2) the Commonwealth "has exercised due diligence," and (3) the refiling is not an attempt to circumvent the time limitation of Rule 600:

> In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600.

*Id.* at comment (citing *Meadius*, 870 A.2d 802).[5]

The seminal case, from which this test is derived, is *Meadius*. "Prior to *Meadius*, Pennsylvania law held that the . . . run date in cases involving two complaints began with the second complaint where there was no intent by the Commonwealth to evade the speedy-trial rule." *Peterson*, 19 A.3d at 1136. In deciding *Meadius*, the Supreme Court "expanded its prior holdings" and held "that even where the Commonwealth does not intend to circumvent Rule 600, the Commonwealth must also demonstrate that it proceeded diligently

_____

[5] This language was added to the Rule 600 comment effective July 1, 2013.

in prosecuting the original case in order to receive the benefit of the run date commencing from the filing of the second complaint." *Id.*

In *Meadius*, the Commonwealth repeatedly requested continuances of the preliminary hearing on the first complaint. The delays "were all caused when [the Commonwealth's] prosecuting attorney or its witnesses were absent attending to personal matters or for unexplained reasons." *Meadius*, 870 A.2d at 807. The district justice threatened to dismiss the case. To avoid this result, the Commonwealth withdrew the complaint and filed a second, identical complaint. The defendant sought dismissal of the second complaint under Rule 600. The Supreme Court held that because the Commonwealth had not diligently prosecuted the first complaint, refiling the charges in a second complaint did not recommence the Rule 600 period. *Id.* at 808.

Six years later, in *Peterson*, this Court, sitting *en banc*, considered the reverse scenario, and held that if the Commonwealth diligently prosecutes the first complaint, the date of the filing of the second complaint restarts the Rule 600 period. In *Peterson*, the Commonwealth witnesses had been unable to attend the preliminary hearing on three occasions, which caused delay "beyond the control of the Commonwealth." *Peterson*, 19 A.3d at 1134, 1139. The district court dismissed the first complaint for lack of prosecution. The Commonwealth refiled the same charges, and the defendant moved for dismissal under Rule 600.

On appeal, we specifically considered whether the Commonwealth must act with due diligence in the period after the first complaint was dismissed, if

- 11 -

the Commonwealth had been diligent in its prosecution of that complaint. ***Id.*** at 1139. We answered this question in the negative, noting "a Rule 600 analysis pertains to the Commonwealth's actions during a pending action and not after the court has dismissed a charge or charges." ***Id.*** We explained this result comports with intent of Rule 600:

> Where the Commonwealth exercises due diligence in prosecuting the original criminal complaint, the time period between the dismissal of the first complaint and the re-filing of the second complaint is irrelevant for purposes of Rule 600 and the Commonwealth is only required to [refile] within the applicable statute of limitations. Such a holding is consistent with the purpose of Rule 600. As noted by our Supreme Court in [***Commonwealth v.***] ***Johnson***[, 409 A.2d 308 (1979)], the purpose of our speedy trial procedural rule is "concerned with limiting the period of anxiety and concern accompanying public accusation." ***Johnson***, *supra* at 310 (internal quotations omitted). Since [the defendant] was not charged in the intervening period or incarcerated on that case, he was free from such concerns. ***Id.*** at 311.
>
> In sum, when a trial court is faced with multiple identical criminal complaints, it must first determine whether the Commonwealth intended to evade Rule 600's timeliness requirements by withdrawing or having *nolle prossed* the charges. If the prosecution attempted to circumvent Rule 600, then the mechanical run date starts from the filing of the initial complaint, and the time between the dismissal of one complaint and the re-filing of the second complaint is counted against the Commonwealth. However, where the prosecution has not attempted to end run around the rule, and a competent authority properly dismissed the case, the court must next decide if the Commonwealth was duly diligent in its prosecution of the matter. Where the prosecution was diligent, the inquiry ends and the appropriate run date for purposes of Rule 600 begins when the Commonwealth files the subsequent complaint.

***Id.*** at 1141; ***accord Commonwealth v. Dixon***, 140 A.3d 718, 726 (Pa.Super. 2016) (finding that because the Commonwealth "acted with due

- 12 -

diligence while the assault charges were pending . . . any purported lack of diligence on the part of the Commonwealth during the time when the charges were withdrawn but before they were [refiled], is irrelevant for Rule 600 purposes").

Recently, in another two-complaint case, **Womack**, the Supreme Court applied the "**Meadius** test" that is now included in the official comment to Rule 600. **See Womack**, 315 A.3d at 1239. The Court explained that "the due diligence inquiry" the **Meadius** test requires "relates to whether the Commonwealth's basis for filing the second complaint was precipitated by its lack of diligence in prosecuting the first complaint." **Id.** at 1240.

In **Womack**, the District Attorney filed a first complaint, and while that was pending, the Attorney General conducted a grand jury investigation and filed a second complaint. The Attorney General's prosecution ultimately charged 28 offenses, "some of which overlapped in both date and substance with some of the charges filed in the first case." **Womack**, 315 A.3d at 1252 (Wecht, J., concurring). The first complaint was dismissed pursuant to Rule 600, and the case proceeded only on the second complaint.

The Supreme Court applied the **Meadius** test and found the denial of the Rule 600 motion was proper. It held that under the "unique facts" of the case, because the second complaint was not filed due to a lack of diligence in prosecuting the first complaint, but due to the desire to gather additional evidence, the relevant period for the due diligence analysis was the time between the filing of the two complaints. **Id.** at 1240. The Court stated,

- 13 -

> Where the Commonwealth files two different criminal complaints against a defendant, the Commonwealth receives the benefit of the filing date of the second complaint for Rule 600 purposes where it demonstrates that it acted with due diligence between the period in which the complaints were filed. The Commonwealth must also establish that the filing of the second complaint was necessitated by factors beyond its control and that its actions were not an attempt to circumvent or manipulate the speedy trial requirements.

*Id.* at 1241 (emphasis added).

Importantly, in *Womack*, the first complaint was still pending when the Commonwealth filed the second complaint; it had neither been withdrawn nor dismissed. Moreover, the second complaint was a "different" complaint – not a mere duplicate of the first. These circumstances required analysis of whether the filing the second complaint was necessitated by the Commonwealth's failure to exercise due diligence after filing the first complaint – including the period between filing the first and second complaints. Again, the Court emphasized that this period only became relevant "under the unique facts of th[e] case." *Id.* at 1240.

Thus, *Womack* did not overturn *Peterson*. Rather, *Womack*, *Peterson*, and *Meadius* all require that the due diligence inquiry begin with whether the filing of a second complaint was necessitated by the Commonwealth's failure to diligently prosecute the first complaint. The Commonwealth's actions after the withdrawal or dismissal of the first complaint only become relevant for Rule 600 purposes if the Commonwealth

was forced to file a second complaint because it failed to exercise due diligence in prosecuting the first complaint.[6,7]

Determining whether the Commonwealth exercised due diligence is a fact-specific inquiry, which "does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." Pa.R.Crim.P. 600 at comment (quoting **Commonwealth v. Selenski**, 994 A.2d 1083, 1089 (Pa. 2010)).

Here, the court found that the Commonwealth did not fail to exercise due diligence in prosecuting the first complaint, and that the first complaint was dismissed due to factors beyond the Commonwealth's control. This was not an abuse of discretion. The district court dismissed the first complaint after Trooper Garcia failed to attend the preliminary hearing due to a COVID infection. Trooper Garcia testified that he had contracted COVID shortly prior to the date of the preliminary hearing and he was precluded from working until after the hearing had passed. However, his supervisor did not alert the court or the prosecutor that a continuance was necessary. Viewed in the light

---

[6] We acknowledge that the language of both **Meadius** and the comment to Rule 600 reference withdrawal of the first complaint, not its dismissal. However, **Womack** applied the **Meadius** test even though the first complaint in **Womack** had not been withdrawn when the second complaint was filed, and in fact was never withdrawn, but ultimately dismissed. 315 A.3d 1239. We accordingly find the **Meadius** test applicable here, where the first complaint was dismissed, rather than withdrawn.

[7] **Harth**, which the Supreme Court decided prior to **Womack**, did not involve the filing of two complaints. **See Harth**, 252 A.3d at 621-22. It therefore does not control the Rule 600 analysis in this case.

most favorable to the Commonwealth, the trial court permissibly found that these factors were beyond the control of the Commonwealth. Under these circumstances, as in **Peterson**, the Rule 600 period began anew when the second complaint was filed. The court therefore did not abuse its discretion in denying the Rule 600 motion.

In his second issue, Butts argues there was insufficient evidence that Trooper Garcia informed him he was "the subject of an official investigation of a violation of the law" before he gave Trooper Garcia a false name. Butts' Br. at 30 (quoting 18 Pa.C.S.A. § 4914(a)). Butts asserts that formal notice is required and "[a] discussion over consent [to search] . . . does not suffice." *Id.* at 35; **see also id.** at 31-32 (citing **In re D.S.**, 39 A.3d 968, 974 (Pa. 2012), **Commonwealth v. Kitchen**, 181 A.3d 337, 342-43, 345 (Pa.Super. 2018) (*en banc*), and **Commonwealth v. Barnes**, 14 A.3d 128, 131 (Pa.Super. 2011)). Butts admits that Trooper Garcia told him not to "bullshit" him and that he would be charged with a criminal offense if he did not give Trooper Garcia a "real name." *Id.* at 33, 35 (quoting Cmwlth.'s Ex. 1). However, Butts claims this is not the equivalent of formal notice that he was the subject of an investigation and points out that Trooper Garcia told him he was not under arrest. *Id.* at 34.

The court determined Trooper Garcia sufficiently informed Butts that he was the subject of a police investigation when he read Butts the PSP form to obtain his consent to search the vehicle. Trial Court Op. at 8. The court found, "If [Butts] was informed of a search of his vehicle by police and he consented

- 16 -

to it, then he was informed that he was being investigated by them. There are no magic words that are otherwise required." ***Id.***

The sufficiency of the evidence presents a question of law, which we review *de novo*. ***Commonwealth v. Castaneira***, 322 A.3d 223, 227 (Pa.Super. 2024). The evidence is sufficient when it enables the fact finder to find every element of the charged offense beyond a reasonable doubt. ***Commonwealth v. Griffith***, 305 A.3d 573, 576 (Pa.Super. 2023), *appeal denied*, 319 A.3d 503 (Pa. 2024). The Commonwealth may sustain this burden through wholly circumstantial evidence. ***Id.*** When conducting this review, we must view the trial evidence in the light most favorable to the Commonwealth, and bear in mind that the fact finder is free to believe all, part, or none of the evidence. ***Id.***

The elements of the offense of false identification to law enforcement authorities are as follows.

> A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S.A. § 4914(a). Therefore, in the instant matter, the Commonwealth was required to prove that before Butts provided a false identity, he was "informed" by law enforcement that he was "the subject of an official investigation of a violation of law." ***Id.***

In ***Commonwealth v. Kitchen***, we held that the false identification statute imposes an "element akin to a formal notice requirement," rather than

a requirement that the defendant understood he was under investigation. 181 A.3d at 343. There, we found the notice element unsatisfied where the police officer pulled over the defendant's vehicle, did not tell her that she was the subject of any investigation, and the defendant provided a false identification. *Id.* at 338, 341-42, 345.

We reviewed *Commonwealth v. Barnes*, in which we likewise found the notice element unsatisfied. In that case, the officer stopped a vehicle because there was an air freshener hanging from the rear-view mirror. *Id.* at 343. The defendant, a passenger, twice provided a false identification. The officer told the defendant he was under investigation, and the defendant presented a false identification a third time. *Id.* We found this notice to be insufficient because the only investigation pertained to the defendant's presumably false identification, rather than any other violation of the law that required investigation at the time the defendant provided the false identification. *Id.* at 343-44 (citing *Barnes*, 14 A.3d at 131-32).

We also discussed *In re D.S.*, in which the police stopped a juvenile to investigate a robbery, and the juvenile provided a false identification. The officers had not identified themselves as police or told the juvenile that he was the subject of an investigation. *Id.* at 344 (citing *D.S.*, 39 A.3d at 970). The Supreme Court rejected the Commonwealth's argument that because the "surrounding circumstances" implied the police were investigating the juvenile, the notice element was satisfied. *Id.* at 345 (quoting *D.S.*, 39 A.3d at 974-75).

In the case before us, Trooper Garcia told Butts that he knew he was the owner of the vehicle, and he requested Butts' consent to search the vehicle. He also reviewed the terms on the written PSP consent to search form. However, even viewed in the light most favorable to the Commonwealth, the evidence does not reflect that Trooper Garcia informed Butts he suspected Butts of violating the law and was conducting an official investigation into Butts before Butts provided a false name. We reject the trial court's conclusion that the officer's request for consent to search fulfilled the statutory requirement that the police provide this information to the accused. We therefore vacate Butts' conviction for false identification to law enforcement authorities. *In re D.S.*, 39 A.3d at 975; *Kitchen*, 181 A.3d at 345; *Barnes*, 14 A.3d at 132.

Because the trial court sentenced Butts to serve a consecutive sentence of one year of probation for this offense, vacating this conviction will disturb the court's overall sentencing scheme. We therefore vacate the judgment of sentence and remand for resentencing. *See Commonwealth v. Tanner*, 61 A.3d 1043, 1048 (Pa.Super. 2013).

Conviction for false identification to law enforcement authorities reversed. Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025