J-A25024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD WAYNE BOWMAN | : | |
| | : | |
| Appellant | : | No. 352 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 6, 2019
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000090-2018,
CP-18-CR-0000400-2018

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:          **FILED JANUARY 7, 2021**

Appellant, Donald Wayne Bowman, appeals from the judgment of sentence entered December 6, 2019, as made final by the denial of his post-sentence motion on January 28, 2020, following his jury trial convictions for multiple crimes arising from a motor vehicle accident.  We affirm.

The facts and procedural history of this case are as follows.  On December 23, 2016, the victims, Brenda Younkin ("Younkin") and Megan Byrnes ("Byrnes"),[1] were traveling southbound on Coudersport Pike, in Lock Haven, Pennsylvania, when Appellant, who was traveling northbound on the same road, veered into their lane and crashed head on into their vehicle.  Upon arrival to the scene of the accident, Corporal Jeffrey Hildebrand observed that

_____

[1] Brynes's minor son was also in the vehicle.

Appellant exhibited signs of intoxication. Both Younkin and Byrnes suffered serious injuries as a result of the accident.

On August 30, 2017, the Commonwealth charged Appellant with various crimes relating to the accident. A preliminary hearing was originally scheduled for September 5, 2017 but, upon the request of Appellant's attorney, R. Thom Rosamilia, Esquire, the hearing was continued until September 26, 2017. "A further continuance was ordered to October 10, 2017 by President Judge Craig P. Miller. On that same October date, [however,] the Commonwealth withdrew the criminal complaint due to significant errors, including the omission of a victim." Trial Court Opinion, 10/29/18, at 1.

On December 21, 2017, the Commonwealth filed a second complaint against Appellant. The Commonwealth charged Appellant with two counts of aggravated assault by vehicle while driving under the influence (DUI); DUI-general impairment; DUI-highest rate; three counts of recklessly endangering another person (REAP); two counts of aggravated assault; and various summary offenses. The preliminary hearing was originally scheduled for January 16, 2018 but, due to the recusal of Magisterial District Judge ("MDJ") Frank P. Mills, the hearing was continued by the court to February 13, 2018. At the preliminary hearing on February 13, 2018, the court dismissed the DUI-highest rate charge, all three counts of REAP, and both counts of aggravated assault. The remaining charges were bound over for trial and docketed at CP-18-CR-0000090-2018 (hereinafter, "Docket Number 90-2018"). On March 23, 2018, following Appellant's written waiver of

arraignment, the trial court entered an order scheduling jury selection and trial to begin on May 11, 2018.

Thereafter, on May 3, 2018, the Commonwealth filed an application to continue trial because it intended to re-file charges that were dismissed at the February 13, 2018 preliminary hearing. The court granted the Commonwealth's application on May 10, 2018.[2] On May 31, 2018, the Commonwealth filed additional charges against Appellant. Specifically, the Commonwealth charged Appellant with two counts of aggravated assault by vehicle and DUI-highest rate. A preliminary hearing was set for July 24, 2018, but was continued by the court because the MDJ was unavailable. The preliminary hearing finally occurred on August 7, 2018, during which the court dismissed the DUI-highest rate charge, but bound the remaining charges over for trial. These charges were docketed at CP-18-CR-0000400-2018 (hereinafter, "Docket Number 400-2018").

On August 30, 2018, the Commonwealth filed a motion to consolidate Docket Number 90-2018 and Docket Number 400-2018. Both cases were consolidated on September 10, 2018, by order of court. On September 18, 2018, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600, alleging that the Commonwealth violated his right to a speedy trial. After

_____

[2] The Honorable Craig P. Miller entered an order on May 10, 2018 scheduling the matter for criminal call of the list on June 25, 2018. In this same order, the trial court erroneously indicated that Appellant filed a request for a continuance.

argument, the trial court denied Appellant's motion on October 29, 2018. Trial was then set to begin on December 18, 2018.

On October 31, 2018, Appellant filed an omnibus pre-trial motion which included, *inter alia*, a writ of *habeas corpus* and a motion to suppress. On November 2, 2018, Appellant also filed a motion to continue trial pending resolution of his omnibus motion. The trial court granted Appellant's motion for continuance on November 7, 2018 and continued trial until January 29, 2019.

On December 18, 2018, the trial court convened a hearing on Appellant's omnibus pre-trial motion. The court denied the motion on January 11, 2019. The trial court then entered an order on January 18, 2019, postponing trial until April 17, 2019, specifically attributing the reason for the delay to Appellant. On March 15, 2019, Attorney Rosamilia withdrew his appearance on behalf of Appellant, and Patrick Johnson, Esquire entered his appearance. As such, on that same day, the trial court entered an order postponing jury selection until September 6, 2019 and setting trial to begin in October 2019. Again, the court specifically attributed the delay to Appellant.

Jury selection took place on September 6, 2019. Almost a month later, Appellant's jury trial commenced on October 3, 2019. On that same day, the jury convicted Appellant of the following offenses. At Docket Number 90-2018, the jury convicted Appellant of two counts of aggravated assault by

vehicle while DUI;[3] DUI-general impairment;[4] careless driving;[5] and reckless driving.[6]  At Docket Number 400-2018, the jury convicted Appellant of two counts of aggravated assault by vehicle.[7]  Appellant filed a post-trial motion on October 14, 2019, which the trial court denied on December 4, 2019.  On December 6, 2019, the trial court sentenced Appellant to an aggregate term of 54 to 136 months' incarceration.  Appellant filed a post-sentence motion on December 13, 2019.  The trial court denied Appellant's motion on January 28, 2020.

On February 20, 2020, Appellant filed a single notice of appeal for both docket numbers.[8]  On March 26, 2020, this Court issued a rule to show cause

_____

[3] 75 Pa.C.S.A. § 3735.1(a).

[4] 75 Pa.C.S.A. § 3802.

[5] 75 Pa.C.S.A. § 3714(a).

[6] 75 Pa.C.S.A. § 3736.

[7] 75 Pa.C.S.A. § 3732.1.

[8] On February 27, 2020, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1).  Thereafter, Appellant filed a motion for an extension of time to file his Rule 1925(b) statement.  The trial court granted Appellant's motion and directed him to file the concise statement on or before April 3, 2020.  Appellant filed his concise statement on April 6, 2020.  In the meantime, however, our Supreme Court declared a Statewide Judicial Emergency on March 18, 2020 in light of the COVID-19 pandemic.  In its order, the Court stated that "any legal papers or pleadings which [were] required to be filed between March 19, 2020 and April 30, 2020 shall be deemed to have been timely filed if they are filed by May 1, 2020."  In re: General Statewide Judicial Emergency, Nos. 531 & 532 (Pa. March 18, 2020).

why the appeal should not be quashed pursuant to our Supreme Court's decision in ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018). On April 20, 2020, counsel for Appellant responded to the show cause order. In his response, Appellant's counsel acknowledged that he filed only one notice of appeal, listing both docket numbers. Counsel, however, claimed that ***Walker*** was inapplicable because, *inter alia*, Docket Number 90-2018 and Docket Number 400-2018 were consolidated for trial and other purposes throughout the proceedings and, thus, had been "treated as a single criminal matter." Appellant's Response to Show Cause Order, 4/20/20, at 1. On April 22, 2020, this Court discharged the rule to show cause by *per curiam* order and permitted the appeal to continue with the proviso that the ruling was not a binding, final determination and that the panel assigned to address the merits of the appeal could further address the ***Walker*** issue.

Hence, before we consider the merits of Appellant's claims, we first determine whether this appeal is properly before us. As this Court previously explained:

> Pennsylvania Rule of Appellate Procedure 341(a) directs that "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a). "The Official Note to Rule 341 was amended in 2013 to provide clarification

---

Because Appellant's concise statement was filed before May 1, 2020, Appellant's concise statement was timely filed. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 22, 2020, in which it expressly referenced its opinions filed October 24, 2018, October 29, 2018, and November 27, 2019.

regarding proper compliance with Rule 341(a)[.]" [*Walker*, 185 A.3d at 976]. The Official Note now reads:

> Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal[] must be filed. *Commonwealth v. C.M.K.*, 932 A.2d 111, 113 & n.3 (Pa. Super. 2007) (quashing appeal taken by single notice of appeal from order on remand for consideration under Pa.R.Crim.P. 607 of two persons' judgments of sentence).

Pa.R.A.P. 341, Official Note.

In *Walker*, our Supreme Court construed the above-language as constituting "a bright-line mandatory instruction to practitioners to file separate notices of appeal." *Walker*, 185 A.3d at 976-[9]77. Therefore, the *Walker* Court held that "the proper practice under Rule 341(a) is to file separate appeals from an order that resolves issues arising on more than one docket. The failure to do so requires the appellate court to quash the appeal." *Id.* at 977. However, the Court tempered its holding by making it prospective [and applicable only to appeals filed after June 1, 2018], recognizing that "[t]he amendment to the Official Note to Rule 341 was contrary to decades of case law from this Court and the intermediate appellate courts that, while disapproving of the practice of failing to file multiple appeals, seldom quashed appeals as a result." *Id.* Accordingly, the *Walker* Court directed that "**in future cases** Rule 341 will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." *Id.*

*Commonwealth v. Williams*, 206 A.3d 573, 575–576 (Pa. Super. 2019)

(emphasis in original). Because Appellant filed his notice of appeal on

February 20, 2020, the rule announced in *Walker* governs.[9] As stated above,

_____

[9] Contrary to Appellant's counsel's assertion in his response to this Court's show cause order, *Walker* applies to the instant case even though Docket Number 90-2018 and Docket Number 400-2018 were consolidated for trial. *See Commonwealth v. Johnson*, 236 A.3d 1141 (Pa. Super. 2020) (*en banc*) (applying *Walker* even though the appellant's four separate dockets were consolidated for his jury trial).

Appellant filed a single notice of appeal listing both docket numbers, rather than two separate notices of appeal at each trial court docket. As such, Appellant violated our Supreme Court's mandate in *Walker* and this appeal is subject to quashal.

This Court, however, in *Commonwealth v. Stansbury*, 219 A.3d 157 (Pa. Super. 2019), declined to quash an appeal listing two docket numbers because the trial court misinformed Stansbury that he could file a single notice of appeal. Indeed, we determined that the trial court's failure to advise Stansbury properly regarding his appellate rights amounted to a "breakdown in the court system" and, accordingly, we excused his failure to comply with *Walker*. *Stansbury*, 219 A.3d at 160. Notably, this holding in *Stansbury* was recently reaffirmed by an *en banc* panel of this Court. *See Commonwealth v. Larkin*, 235 A.3d 350, 354 (Pa. Super. 2020) *(en banc)* (holding that, because the trial court's order informed Larkin that he had "[30] days from the date of [the] order to file **an** appeal" a breakdown in the court system occurred which excused non-compliance with *Walker*) (emphasis in original). Thus, based upon both *Stansbury* and *Larkin*, "we may overlook the requirements of *Walker* where [] a breakdown occurs in the court system, and a defendant is misinformed or misled regarding his appellate rights." *Larkin*, 235 A.3d at 354.

Here, our review of the record reveals a scenario similar to that presented in *Larkin* and *Stansbury*. Indeed, during Appellant's sentencing

hearing on December 6, 2019, the trial court explained his appellate rights as follows.

> You have certain post[-]sentencing rights. You have a right to file a post[-]sentenc[e] motion within [ten] days from today's date[, today being December 6, 2019]. You also have a right to file **an appeal** directly to the Superior Court within [30] days from [the date the trial court denies your post-sentence motion]. You have a right to assistance of counsel in preparation of any motions or appeals. If you cannot afford counsel and your present counsel cannot continue, the [c]ourt will appoint counsel for you without cost to you. If you do choose to file a post[-]sentence motion, that must be decided by the [trial c]ourt within 120 days. If it is not decided by the [c]ourt within 120 days, that is deemed [a] denial which would entitle you again to your appeal rights.

N.T. Sentencing Hearing, 12/6/19, at 30 (emphasis added). The trial court therefore "utilized the singular" when it advised Appellant to file **an appeal** even though "**Walker** required that Appellant file separate notices of appeal at each docket number." **Stansbury**, 219 A.3d at 160. Accordingly, the trial court misinformed Appellant regarding his appellate rights and a breakdown in the court system occurred which permits us to overlook the requirements of **Walker**. As such, we decline to quash the instant appeal.

Appellant raises the following issues on appeal:

I.   Whether the evidence was insufficient as a matter of law to sustain [Appellant's] convictions for aggravated assault by vehicle and aggravated assault [by vehicle] while DUI where there was no trial evidence elicited regarding the nature of the medical injuries [] Byrnes[] sustained to established the serious bodily injury element [for each] of those charges and[, therefore, those offenses were] not proven beyond a reasonable doubt?

II.  Whether a new trial is warranted [because] the trial court erred by neglecting to conduct an inquiry into an actual or potential

conflict [of interest] with the Clinton County District Attorney's Office when it learned that [Appellant's] pre-trial counsel withdrew from his case to join the Clinton County District Attorney's Office?

III. Whether the trial court erred in denying the request for a mistrial and/or by failing to draw a new panel of jurors when a prospective juror on two [occasions] stated before the entire jury pool that he[r] husband was killed by a drunk driver?

IV. Whether the trial court erred in denying [Appellant's] pre-trial motion to di[s]miss based upon a Rule 600 violation where the Commonwealth failed to exercise due diligence in bringing [Appellant] to trial within 365 days?

V. Whether the trial court erred in overruling [Appellant's] motion for a mistrial after . . . Dr. [Megan] Rapp [testified] . . . that [Appellant] was "laughing" about the accident [because] such improper demeanor evidence was not relevant, was more prejudicial than probative, [and] was improper opinion evidence that inferred guilt and otherwise violated [Appellant's] right to a fair trial?

Appellant's Brief at 4-5 (superfluous capitalization omitted).

In his first issue, Appellant argues that the evidence was insufficient to sustain his convictions for aggravated assault by vehicle while DUI and aggravated assault by vehicle as to the victim, Byrnes. Specifically, Appellant claims that the Commonwealth failed to established that Byrnes suffered "serious bodily injury" because it did not utilize the testimony of "any medical doctor or treating medical professional" regarding the nature of her injuries and because Byrnes' testimony was "devoid of identifying the nature and extent of her injuries, let alone if they rose to serious bodily injury." Appellant's Brief at 14 and 16.

Our standard of review regarding the sufficiency of the evidence is as follows:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth may not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014–1015 (Pa. Super. 2002) (citations omitted).

In relevant part, the Motor Vehicle Code provides as follows.

**§ 3732.1.  Aggravated assault by vehicle**

(**a) Offense**.--Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3732.1(a).

**§ 3735.1. Aggravated assault by vehicle while driving under the influence**

**(a) Offense defined**.—Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury.

75 Pa.C.S.A. § 3735.1(a).

Further,

> With respect to the sole element challenged by [a]ppellant, that of "serious bodily injury," the Motor Vehicle Code defines such as "[a]ny bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 75 Pa.C.S.A. § 102. Serious bodily injury encompasses varying degrees of injury. **See Commonwealth v. Spotti**, 94 A.3d 367, 381 (Pa. Super. 2014) (*en banc*) (finding evidence sufficient to support determination that victim suffered "serious bodily injury" when victim suffered bone infection in arm injured in car crash, spent almost a week in the hospital following surgery to combat infection, and continues to have limited use of arm); **Commonwealth v. Caterino**, 678 A.2d 389 ([Pa. Super.] 1996) (holding serious bodily injury existed where the victim underwent surgery to repair severed artery).

**Commonwealth v. Grays**, 167 A.3d 793, 808 (Pa. Super. 2017) (parallel citation omitted).

Herein, the Commonwealth presented testimony explaining that the collision "was a very violent car crash" that injured Byrnes, as well as Younkin. N.T. Trial, 10/3/19, at 59. Younkin and a witness, Sharon Cryder, testified that Byrnes was fading in and out of consciousness prior to being taken to the hospital after the crash. **Id.** at 37-38 and 109. Byrnes testified that she

"woke up in [the] hospital bed tied down" with "tubes down [her] throat" and that she was "not able to breathe" or "move." *Id.* at 28. In addition, Byrnes testified that, following the accident, she was not released from the hospital for "about a month and [one-]half," and, during that time, she underwent "multiple surgeries" and needed to do "physical therapy rehab." *Id.* at 28-29. Further, Byrnes explained that she needed to stay with her father upon her release from the hospital because she was "in a wheelchair for four to five months" and that, to this day, she still feels the "effects of the crash." *Id.* at 29.

After reviewing the testimony presented at trial, particularly that of Byrnes, we conclude that, when viewed in the light most favorable to the Commonwealth as the verdict-winner, the Commonwealth presented sufficient evidence from which the jury could reasonably conclude that Byrnes suffered "serious bodily injury," even without the presentation of expert medical testimony. *See Commonwealth v. Lee*, 2019 WL 2407751, at *6 (Pa. Super. June 7, 2019) (unpublished memorandum) (holding that the evidence was sufficient to sustain the appellant's conviction for aggravated assault even though the Commonwealth did not present "expert medical testimony or the victim's medical records" to prove that the victim suffered "'serious bodily injury'"). Indeed, read in conjunction, the Commonwealth established that after the crash, Byrnes's was intubated, needed multiple surgeries and physical rehabilitation, stayed in the hospital for an extended

period and, upon her release, needed a wheelchair for months. As such, we conclude that the evidence was sufficient to sustain Appellant's convictions.

In his second issue, Appellant argues that he is entitled to a new trial because the trial court "failed to make any inquiry" into a potential conflict of interest after Appellant's pre-trial counsel, Attorney Rosamilia, withdrew from representation and "joined the Clinton County District Attorney's Office as a part-time assistant district attorney." Appellant's Brief at 21-22. Appellant, however, did not raise this issue in any pre-trial motion, during trial, or in his post-trial motion. Appellant raised this issue for the first time in his Rule 1925(b) statement and currently on appeal. As our appellate rules make clear, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Moreover, '[a] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order.'" *Commonwealth v. Watson*, 835 A.2d 786, 791 (Pa. Super. 2003) (citation omitted). We therefore conclude that this issue is waived. *See Commonwealth v. Kelley*, 664 A2d 123, 126 (Pa. Super. 1995) (explaining that the appellant waived his claim regarding a potential conflict of interest because the issue was "never raised in [his] omnibus pre-trial motion").

In his third issue, Appellant claims that the trial court erred in failing to grant his request for a mistrial after a prospective juror, Donna Maines ("Maines"), in the presence of other prospective jurors, stated "not once, but

twice," that her husband was killed by drunk driver.  Appellant's Brief at 27.
We disagree.

In this case, jury selection took place on September 6, 2019.  Following the trial court's instructions and initial questioning, the court "turn[ed] the questions over to the Commonwealth."  N.T. Jury Selection, 9/6/19, at 17.  The attorney for the Commonwealth then stated:

> [**Commonwealth**:] Judge [John B.] Leete has outlined the basic facts of the case.  I [am] just going to add a little more of the allegations in this case just to make sure that all of you are going to be able to be fair and impartial.
>
> As the [j]udge indicated, this case, as you can probably figure out, involves some type of crash.  In fact, it was a head-on crash. . . and he mentioned two victims, and those victims were in a car coming southbound, and the Commonwealth has alleged that [Appellant] was traveling northbound, went into their lane, crashed head on, causing them very serious injuries requiring months of treatment and some disabilities.
>
> Obviously[,] as you can probably tell by the charges the Commonwealth is alleging, [Appellant] was impaired by alcohol at that time.
>
> So, the reason I bring that up is that the facts as I [have] laid out may be disturbing to some people, and based upon those facts I [have] laid out, is there anyone in here who believes they cannot be fair and impartial if they served on this jury?
>
>                ***
>
> [] **Maines**:  Donna Maines.  My husband was killed by an impaired driver.
>
> **The court**: Okay.  Thank you.  And because of that fact, would it be very difficult for you to sit in this case where there is an allegation, only an allegation at this time, of an impaired driver?
>
> [] **Maines**: Yes.

- 15 -

*Id.* at 18-19.  Based upon her statement, Maines was excused.  *Id.* at 19.

Thereafter, the following exchange occurred:

> **The court**: Ladies and gentlemen, again, thank you for your patience and your participation in this [j]ury [s]election process. I have just one final question for you.
>
> Considering the [c]ourt's questions, the Commonwealth's questions, and defense [counsel's] questions, or for any other reason, is there any reason why any of you cannot be fair and impartial jurors in this case joined between the Commonwealth and [Appellant]?  If so, please let us know at this time.
>
> I will note there is no response – I [am] sorry. We did have a response way back there.
>
> [] **Maines**:  I already stated my name, Donna Maines.  I did say that my husband was killed by an impaired driver.  I did not know if I had to restate that.
>
> **The court**: Again, we [have] excused you, ma'am, and I [will] just caution the panel that this witness's unfortunate loss is completely unrelated to the case before us today and you should not allow that to influence your judgment in any way should you be selected here today.

*Id.* at 26-27.  Following Maines's statement, Appellant's counsel moved for a

mistrial.  *Id.* at 28.  The court responded as follows:

> The [c]ourt gave an instruction on the matter and I do [not] feel that there is any harm given the instruction. … It [is] unfortunate that this woman spoke again, but we dealt with it.  … So motion is denied.

*Id.* at 28.

Upon review of the transcript of the *voir dire* proceedings, we conclude

that the trial court did not abuse its discretion in denying Appellant's motion

for a mistrial as the empaneled jury in this case was fair and impartial.  First,

- 16 -

after Maines' initial statement, she was excused and, therefore, not selected to serve as a juror in this case. Second, Maines' statement "contained no specific comment about [Appellant], his credibility or character, the merits of the case, or any possible defenses." *Commonwealth v. Maxwell*, 421 A.2d 699, 702 (Pa. Super. 1980). Rather, Maines simply indicated that, because of her experience relating to a separate case and accused, she could not serve as a fair and impartial juror. *Compare Commonwealth v. Harkins*, 328 A.2d 156 (Pa. 1974) (holding that the appellant was entitled to a new trial because a prospective juror stated, in front of other prospective jurors who were ultimately selected and served on the jury, that the accused stole his car); *Commonwealth v. Santiago*, 318 A.2d 737, 738-739 (Pa. 1974) (holding that the court should have granted a mistrial because, during a recess, a witness informed multiple jurors that appellant "killed an innocent boy" and that the boy was not the "first one [the appellant had] killed"). Lastly, after Maines' second statement, the court immediately issued a cautionary instruction to the remaining prospective jurors. *See* N.T. Jury Selection, 9/6/19, at 27. "'The law presumes that the jury will follow the instructions of the court.'" *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184 (Pa. 2011) (citation omitted). Appellant does not proffer any evidence, and there is no indication in the record, that the jury did not follow the court's

instructions. Based upon the foregoing, we decline to grant Appellant relief on this claim.[10]

In his fourth issue, Appellant argues that the trial court erred in denying his motion to dismiss based upon Pa.R.Crim.P. 600. Appellant's Brief at 30. Appellant's main contention is that the trial court erred in calculating the Rule 600 runtime from the date the Commonwealth filed the second criminal complaint, December 21, 2017 and, instead, should have computed the time from the date that the first complaint was filed, August 31, 2017. *Id.* at 33.

_____

[10] We note that Appellant failed to cite any Pennsylvania case law to support his contention that Maines' statement entitled him to a mistrial. Instead, Appellant relied on *Mach v. Stewart*, 137 F.3d 630 (9th. Cir. 1998). In *Mach*, the appellant was charged with sexual conduct with a minor under 14 years of age. *Id.* at 631. During *voir dire*, a prospective juror, Bodkin, indicated, in front of the entire venire panel that because she worked as a social worker with the State of Arizona Child Protective Services, "she would have a difficult time being impartial given her line of work, and that sexual assault had been confirmed in every case in which one of her clients reported such an assault." *Id.* at 631-632. Prompted by the court's questioning, Bodkin made "at least three more statements . . . that she had never, in three years in her position, become aware of a case in which a child had lied about being sexually assaulted." *Id.* at 632. While Bodkin was later struck for cause, Mach's counsel moved for a mistrial arguing that her statements "tainted" the entire panel. *Id.* On appeal, the Court of Appeals for the Ninth Circuit Court agreed. The court concluded that "at least one juror was tainted" by Bodkin's statement and "entered into jury deliberations with the conviction[] that children simply never lie about being sexually abused" and, as such, this "bias violated Mach's right to an impartial jury." *Id.* at 633. Upon review, we conclude that *Mach* is readily distinguishable from the facts of the instant case. As stated above, unlike in *Mach*, Maines' statement did not relate to Appellant at all. She also offered no opinion as to his credibility or the credibility of those individuals who were witnesses against him. Accordingly, we conclude that Appellant's reliance on *Mach* in support of his claim is unavailing and that the decision does not support his claim for relief.

- 18 -

Our review of this issue is governed by the following standard:

In evaluating [Pa.R.Crim.P.] 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Furthermore:

The proper scope of review [ . . . ] is limited to the evidence of record of the [Pa.R.Crim.P.] 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind [Pa.R.Crim.P.] 600. [Pennsylvania Rule of Criminal Procedure] 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of [Pa.R.Crim.P.] 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, [Pa.R.Crim.P.] 600 must be construed in a manner consistent with society's right to punish and deter crime.

***Commonwealth v. Martz***, 926 A.2d 514, 517 (Pa. Super. 2007) (citation omitted).

Rule 600 provides, in relevant part:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

- 19 -

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600.

This Court has explained

the courts of this Commonwealth employ three steps in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the **mechanical run date**. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an **adjusted run date**.

*Commonwealth v. Bethea*, 185 A.3d 364, 371 (Pa. Super. 2018) (cleaned up) (emphasis in original).

Further:

This Rule has been construed by the Courts of this Commonwealth as preventing the Commonwealth from filing and withdrawing a set of charges and re-filing them later in order to circumvent the 365–day limitation period of the Rule, thereby extending the time that a defendant could be brought to trial. *See Commonwealth v. Meadius*, 870 A.2d 802, 805 ([Pa.] 2005). Prior to *Meadius*, this Court employed a two-prong analysis to determine the proper date to calculate the 365-day period, whereby this Court would calculate the 365–day period from the second filing of charges if the following facts were present: (1) the first complaint was properly dismissed by a competent judicial or magisterial authority; and (2) the Commonwealth's actions precipitating dismissal were undertaken without any intent to evade the rule's mandate. *See id*. [at] 805[,] *citing Commonwealth v. Sires*, 424 A.2d 1386, 1387 ([Pa. Super.] 1981)[.] If these facts were not present, the 365–day period was to be calculated using the date of the first filing of charges as the start date. *See* [*Meadius*, 870 A.2d at 804.]

In addition to the "evasion" prohibition of Rule 600 found and explained by the *Sires* line of cases, the *Meadius* Court also recognized that section (G) of the Rule precludes the withdrawal

and re-filing of charges where the Commonwealth fails to exercise "due diligence" in bringing the charges against the defendant at the earliest possible time. [**Meadius**,] 870 A.2d at 807-808. Further, the lack of "due diligence" provides an independent basis for dismissal under Rule 600(G), regardless of the lack of evasive intent on the part of the Commonwealth. **Id.** [at] 807 n.4.

**Commonwealth v. Johnson**, 11 A.3d 509, 511–512 (Pa. Super. 2010) (parallel citations omitted).

Herein, we conclude that the trial court did not abuse its discretion in utilizing the date the Commonwealth filed its second complaint, December 21, 2017, to calculate the mechanical run date for purposes of Rule 600. The first complaint, filed August 31, 2017, was withdrawn by the Commonwealth after it determined that the complaint contained "significant errors, including the omission of a victim." Trial Court Opinion, 10/29/18, at *1 (un-paginated). In addition, as the trial court recognized, there is no indication that the Commonwealth withdrew the complaint with the intent to evade Rule 600's requirements. **See** Trial Court Opinion, 12/4/19, at *1 (un-paginated). Indeed, the fact that the Commonwealth withdrew the charges a mere 40 days after filing the original complaint and prior to the preliminary hearing suggests that it did not possess such intent. This same factor also supports the trial court's determination that the Commonwealth acted with due diligence "in bringing the charges against the defendant at the earliest possible time." **Johnson**, 11 A.3d at 512; **see also** Trial Court Opinion, 10/29/18, at *2 (un-paginated); Trial Court Opinion, 12/4/19, at *1-2 (un-paginated). We therefore conclude that the trial court correctly calculated the 365-day period

for purposes of Rule 600 from the date the second complaint was filed against Appellant, December 21, 2017. Accordingly, pursuant to Rule 600(A)(2)(a), the mechanical run date in this case is December 21, 2018.

Next, we consider any excludable time and excusable delay to derive an adjusted run date. *See Commonwealth v. Colon*, 87 A.3d 352, 357 (Pa. Super. 2014). "Excludable time is delay that is attributable to the defendant or his counsel." *Id*. The following periods must be excluded:

> (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;
>
> (2) any period of time for which the defendant expressly waives Rule 600;
>
> (3) such period of delay at any stage of the proceedings as results from either the unavailability of the defendant or the defendant's attorney or any continuance granted at the request of the defendant or the defendant's attorney.

Pa. R. Crim. P. 600, *cmt.* Moreover, after a Rule 600 motion to dismiss is filed, "the time taken for [the court to render a decision] . . . is also excludable." *Commonwealth v. Hyland*, 875 A.2d 1175, 1191 (Pa. Super. 2005).

Excusable delay, on the other hand, "is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Colon*, 87 A.3d at 357. In determining whether the Commonwealth has exercised reasonable diligence, we are guided by the following.

> Due-diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth. Judicial delay may justify [the postponement of] trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'

*Commonwealth v. Lynch*, 57 A.3d 120, 124 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1245 (Pa. 2013) (internal citations and quotations omitted).

Herein, the Commonwealth filed the second complaint against Appellant on December 21, 2017. A preliminary hearing was scheduled for January 16, 2018 but, because MDJ Mills recused himself, the preliminary hearing was continued until February 13, 2018. After the preliminary hearing, jury selection and trial was set to begin on May 11, 2018. Then, on May 3, 2018, the Commonwealth filed a motion to continue trial which was subsequently granted by the trial court. Thereafter, on May 31, 2018, the Commonwealth filed another complaint against Appellant. The preliminary hearing for that complaint was originally scheduled for July 24, 2018, but was continued until August 7, 2018 by the court because the MDJ was unavailable. Following the Commonwealth's motion to consolidate, Appellant filed his motion to dismiss on September 18, 2018.

The trial court denied Appellant's motion to dismiss on October 29, 2018. Appellant then filed an omnibus pre-trial motion on October 31, 2018. Appellant also filed a motion to continue trial on November 2, 2018, in order for the court to consider Appellant's omnibus pre-trial motion. The trial court

granted Appellant's motion to continue trial on November 7, 2018, and re-scheduled trial for January 29, 2019. The trial court denied Appellant's omnibus motion on January 11, 2019. Thereafter, on January 18, 2019, the trial court continued trial at the request of Appellant. Appellant's pre-trial counsel withdrew his appearance on March 15, 2019, and, on that same day, the trial court entered an order continuing trial until October 2019 to give Appellant's new trial counsel adequate time to prepare. Appellant's trial finally commenced on October 4, 2019.

Herein, we conclude that Appellant caused the following periods of delay: September 18, 2018 to October 29, 2018 (Appellant's Rule 600 motion to dismiss); November 2, 2018 to January 11, 2019 (Appellant's motion to continue trial for consideration of his omnibus pre-trial motion); January 18, 2019 to March 15, 2019 (Appellant's motion to continue trial); and March 15, 2019 to October 4, 2019 (trial court's order continuing trial in light of the withdrawal of Appellant's pre-trial counsel). As such, a total of 370 days are attributable to Appellant; hence, this time is excludable. Adding the excludable time to the mechanical run date, we calculate the adjusted run date to be December 26, 2019.

We also conclude that that the following period are excusable. First, due to MDJ Mills's recusal, the preliminary hearing originally scheduled for January 16, 2018, was continued until February 13, 2018. Second, the preliminary hearing on July 24, 2018 was continued until August 7, 2018 by the court because the MDJ was unavailable. These two periods, a total of 42

days, constitute excusable delay. *See Commonwealth v. Bradford*, 46 A.3d 693, 704-705 (Pa. 2012) (explaining that delay caused by a district justice will be excusable if the Commonwealth exercises due diligence and a delay "result[s] from judicial delay beyond the Commonwealth's control"). Accordingly, this calculation extends the final, adjusted run date to (at the earliest) February 6, 2020 – nearly four months **after** Appellant's trial. Based on all of the foregoing, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to dismiss filed pursuant to Pa.R.Crim.P. 600.

In his final issue, Appellant argues that the trial court erred in denying his motion for a mistrial after the Commonwealth's witness, Dr. Megan Rapp, testified that Appellant was "laughing" when he received treatment at the hospital following the accident. Appellant's Brief at 36. Our review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. *See Commonwealth v. Simpson*, 754 A.2d 1264, 1272 (Pa. 2000). An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias or ill-will, discretion is abused. *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). A trial court may grant a mistrial only

> where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a

true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Simpson*, 754 A.2d at 1272 (internal citation omitted).

Herein, in its case-in-chief, the Commonwealth presented the testimony of Dr. Megan Rapp, a trauma surgeon at Geisinger Medical Center in Danville, Pennsylvania, who treated Appellant after the accident. During her testimony, the Commonwealth asked her to "describe [Appellant's] demeanor at the time [she] was treating him." N.T. Trial, 10/3/19, at 121. In response, Dr. Rapp stated:

> The things that I specifically clearly remember without even looking at the record was that [Appellant] was laughing about what had happened that night.

*Id.* Appellant's counsel then objected to Dr. Rapp's testimony and moved for a mistrial. *Id.* After discussion, the court stated:

> The motion for mistrial is denied. The jury will disregard the comment relative to [Appellant] laughing and will not consider that for any purpose in the course of the trial or deliberations.

*Id.* at 122. Appellant currently argues that the trial court erred in denying his motion for a mistrial because Dr. Rapp's testimony was "not relevant, more prejudicial than probative, was improper opinion evidence that inferred guilt, and otherwise violated [his] right to a fair trial." Appellant's Brief at 36.

Upon review, we do not believe that the trial court's denial of a mistrial resulted in an abuse of discretion. First, in light of the overwhelming body of proof presented by the Commonwealth, the prejudice resulting from Dr.

Rapp's statement was not great enough to grant a mistrial. Herein, the Commonwealth established that, on the night in question, Appellant was intoxicated,[11] and that, as a result of his intoxication, Appellant caused the accident[12] which resulted in Byrnes' and Younkin's serious bodily injuries.[13] Second, and more importantly, following resolution of Appellant's objection to Dr. Rapp's statement, the trial court issued a curative instruction. Specifically, the trial court told the jury that they were to disregard Dr. Rapp's statement and could not consider it "for any purpose in the course of the trial or deliberations." **See** N.T. Trial, 10/3/19, at 122. "'The law presumes that the jury will follow the instructions of the court.'" **Chmiel**, 30 A.3d at 1184.

_____

[11] Specifically, Cryder testified that she detected alcohol emanating from Appellant and that he appeared intoxicated. N.T. Trial, 10/3/19, at 36. Corporal Hildebrand testified that Appellant "smelled very, very strongly of alcoholic beverages," that Appellant's speech was slurred, Appellant's eyes were "red, glassy and bloodshot," and that Appellant "was staggering and swaying" and "unsure of his footing." **Id.** at 49-50. Corporal Hildebrand also testified that, in his opinion, Appellant was "impaired" and "incapable of safe driving on the night of the accident." **Id.** at 54-55.

[12] Steven Rickard, an expert in the field of accident reconstruction, stated that, in his opinion, Appellant's "vehicle crossed over the double yellow line, [and] struck [Byrnes's and Younkin's] vehicle." N.T. Trial, 10/3/19, at 91. Both Brynes and Younkin also testified that, on the night of the accident, they were traveling in their lane, heading southbound, when they were struck head on by Appellant. **Id.** at 28 and 108.

[13] We summarized the extent of Brynes's injuries above. We note that Younkin also testified regarding her injuries at trial. Younkin stated, *inter alia*, that she needed surgery to "reattach[] [her] hand" to her arm, that she suffered "[b]roken ribs, multiple bruises and contusions," and that she "shattered [her] left ankle and leg." N.T. Trial, 10/3/19, at 110.

Consequently, we hold that the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial.

Based upon the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Bowes joins.

Judge King concurs in the result.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/07/2021