**[J-49-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 110 MAP 2022 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 445 MDA |
| | : | 2021 dated April 29, 2022 Affirming |
| v. | : | the Judgment of Sentence of the |
| | : | Huntingdon County Court of |
| | : | Common Pleas, Criminal Division, |
| MARCUS WOMACK, | : | at No. CP-31-CR-0000851-2018 |
| | : | entered November 12, 2020. |
| Appellant | : | |
| | : | ARGUED: September 14, 2023 |

**OPINION**

**JUSTICE MUNDY** **DECIDED: May 31, 2024**

I. Introduction

In this discretionary appeal, we consider the computation of time for the purposes of Pa.R.Crim.P. 600 where the Commonwealth files two different criminal complaints against a defendant arising out of the same criminal episode. For the reasons that follow, we affirm the Superior Court's order denying relief.

II. Background

On October 6, 2017, law enforcement officers, including Pennsylvania State Trooper Andrew Corl, executed a search warrant at the home of Tyler and Bobbi Martin in Huntingdon County. The search followed a year-long investigation, which revealed that Appellant, Marcus Womack, had been selling drugs from that location. During the search, law enforcement officers recovered from Appellant's person a large sum of

money, drugs, and a stolen firearm. They also found an additional stolen firearm elsewhere in the residence. Appellant was placed under arrest. That same day, Trooper Corl filed a criminal complaint ("first complaint"), charging Appellant with nine offenses, including possession with intent to deliver ("PWID"), conspiracy to commit PWID, and possession of a firearm by a person prohibited. The trial court set Appellant's bail at $250,000.00. Unable to post bail, Appellant remained in custody.

Following the execution of the search warrant, Trooper Corl learned from the Martins and other arrestees more information about the scope of Appellant's drug enterprise, which extended to both Philadelphia and Pittsburgh. Law enforcement officers executed additional search warrants. Trooper Corl also reviewed data from Appellant's cell phone, which had been seized during the search that took place on October 6, 2017. His preliminary review of this information revealed the possibility of a more sophisticated operation than originally anticipated. Based on the foregoing, the Huntingdon County District Attorney's Office sought the assistance of the Office of the Attorney General ("OAG") in pursuing additional charges.

The OAG accepted jurisdiction and submitted the case to a statewide investigating grand jury. During this time, at the request of the OAG, the Huntingdon County District Attorney's Office placed the first complaint on hold. The grand jury investigation commenced in late 2017 and ended on October 23, 2018.[1] On October 31, 2018, the Commonwealth filed another criminal complaint ("second complaint"), charging Appellant with a total of twenty-eight offenses including four counts of PWID, conspiracy to commit PWID, and two counts of corrupt organizations. The charges alleged in the second complaint were not identical to the first complaint but were based upon evidence gathered

---

[1] On April 10, 2018, Appellant, who remained incarcerated, moved for nominal bail pursuant to Pa.R.Crim.P. 600(D)(2). The trial court granted the motion, but Appellant remained in custody due to a parole detainer from a previous case in Philadelphia.

by law enforcement before, during, and shortly after Appellant's arrest and the filing of charges in the first complaint. The OAG's grand jury investigation also led to the arrest of over thirty other individuals for drug-related criminal activity.

On February 13, 2019, Appellant moved to dismiss the second complaint pursuant to Pa.R.Crim.P. 600(D)(1).[2] After a hearing, the trial court denied the motion. On March 13, 2019, Appellant similarly moved to dismiss the first complaint on Rule 600 grounds. The trial court granted this motion on May 9, 2019, and the Commonwealth did not appeal. Soon thereafter, the OAG filed an amended second complaint, reducing the number of charges from twenty-eight to thirteen and providing date ranges, some of which were after the filing of the initial complaint for the remaining counts of PWID.

On September 6, 2019, at a pre-trial conference, Appellant rejected the Commonwealth's plea offer of 11½ to 23 years' imprisonment, asserting the trial court should have granted his motion to dismiss the second complaint under Rule 600. In light of this, Appellant asked the trial court to certify the issue for an interlocutory appeal *nunc pro tunc*. Though the trial court granted this request, Appellant failed to file such appeal and instead filed another Rule 600 motion alleging the Commonwealth attempted to

---

[2] Rule 600(D)(1) provides:

> When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600(D)(1).

circumvent Rule 600 by filing two criminal complaints based on the same criminal conduct. The trial court similarly denied this motion on August 11, 2020.[3]

On October 8, 2020, Appellant proceeded to a bench trial on the second complaint. The trial court found Appellant guilty of the following offenses: three counts of PWID, conspiracy to commit PWID, dealing in proceeds of unlawful activity, corrupt organizations, possession of a firearm by a person prohibited, carrying a firearm without a license, and criminal use of a communication facility. He was acquitted of the remaining charges. On November 12, 2020, Appellant was sentenced to an aggregate term of 39 to 90 years' imprisonment. He received 224 days of credit for time served from October 6, 2017 to April 10, 2018. This spanned the period of time between Appellant's arrest on the first complaint and the date the state parole detainer was lodged. He timely appealed to the Superior Court, maintaining the trial court erred by denying his motion to dismiss the second complaint and asserting that the computation of time for Rule 600 purposes should have been based on the filing date of the first complaint.

The Superior Court affirmed in a unanimous, unpublished memorandum decision. *See Commonwealth v. Womack*, 445 EDA 2021; 2022 WL 1284618 (Pa. Super. filed April 29, 2022). The court recognized that "Rule 600 does not specify which start date to use when two complaints are filed against one defendant," but explained that "the second complaint generally provides the starting point for the calculation" where "the first complaint was properly dismissed." *Id.* at *6 (citing *Commonwealth v. Genovese*, 425 A.2d 367, 370 (Pa. 1981)). It noted, however, that if the Commonwealth attempts to circumvent Rule 600, then the first complaint becomes the starting point for calculation purposes. *Id.* (citing *Commonwealth v. Whitaker*, 359 A.2d 174, 177 (Pa. 1976);

---

[3] Appellant, whose sentence on the Philadelphia case expired on August 7, 2020, was released from custody on his own recognizance.

*Commonwealth v. Lynn*, 815 A.2d 1053, 1058 (Pa. Super. 2003)). The court also noted that the Commonwealth "does not get the benefit of the filing date of an identical second complaint" where it fails to exercise due diligence in "prosecuting its first complaint." *Id.* (citing *Meadius*, 870 A.2d at 808).

The court then discussed two cases it found particularly instructive. It first recounted this Court's decision in *Commonwealth v. Earp*, 382 A.2d 1215 (Pa. 1978). *Id.* Earp was charged with murder, conspiracy, and other offenses. Both the murder and conspiracy charges were dismissed after a preliminary hearing, while the remaining offenses were held for court. The Commonwealth subsequently arrested Earp for the same murder and conspiracy, which kept him confined between his first arrest and trial. *Id.* (citing *Earp*, 382 A.2d at 1216). A plurality of this Court determined that the speedy trial period "begins to run on all charges arising out of a criminal transaction upon the initiation of criminal proceedings charging the defendant with any offense arising out of that transaction." *Id.* (quoting *Earp*, 382 A.2d at 1217). It also found instructive *Commonwealth v. Simms*, 500 A.2d 801 (Pa. 1985), which involved a two-complaint scenario with different charges.[4] *Id.* There, the Commonwealth initially filed a complaint charging Simms with aggravated assault, but following the victim's death, filed a second complaint charging Simms with criminal homicide. *Id.* (citing *Simms*, 500 A.2d at 802). In finding that the date of the second complaint controlled, this Court held that "[i]n cases where an aggravated assault charge is filed, the victim later dies, and, thereafter, a homicide complaint is filed, the [speedy trial] period for trial on the homicide charge should

---

[4] It is unclear whether the first complaint in *Simms* was withdrawn, dismissed, or neither prior to the filing of the second complaint. *Simms*, 500 A.2d at 803 ("[T]he record does not reveal what disposition was made of the complaint initially filed against [Simms] charging him with the offense of aggravated assault. It is not clear that the complaint was ever formally withdrawn or dismissed, and there is no evidence that any judicial review of the matter occurred.").

be deemed to commence with the filing of the latter complaint.[5] *Id.* (citing *Simms*, 500 A.2d at 804).

Based on the foregoing, the court discerned no abuse of discretion or error of law in the trial court's decision denying Appellant's motion to dismiss the second complaint. In its view, based on *Simms*, "[t]he difference between the offenses charged in the complaints demonstrates that the Commonwealth did not try to circumvent Rule 600." *Id.* at *7 (citing *Simms*, 500 A.2d at 803-04). As the second complaint was filed on October 31, 2018, the court used this as the starting point for its Rule 600 calculations. It explained that approximately 230 days of pre-trial delay were caused by Appellant. The court also recognized that Rule 600 was suspended from March 16, 2020 through October 8, 2020 due to the COVID-19 pandemic and thus time excludable. Even so, the court highlighted its skepticism concerning "the Commonwealth's tactics in leaving [the first complaint] open despite not intending to prosecute it." *Id.* at *8. It nevertheless concluded that the Commonwealth's lack of diligence in prosecuting the first complaint was "irrelevant [to] the Rule 600 calculation of [the second complaint]." *Id.* The court therefore affirmed Appellant's judgment of sentence.

Appellant filed a petition for allowance of appeal, which this Court granted to consider the following question:

> Does Rule 600 run from the first or second criminal complaint when the first complaint is still pending against a defendant who is in pretrial detention and the second complaint is premised on grand jury proceedings that subsumed the case underlying the first complaint?

*Commonwealth v. Womack*, 288 A.3d 865 (Pa. 2022) (*per curiam*).

### III. Parties' Arguments

---

[5] Both *Earp* and *Simms* involved Pa.R.A.P. 1100, the predecessor to Rule 600. In contrast to the current version, Rule 1100 required the Commonwealth to bring a defendant to trial within 180 days of filing its complaint.

Appellant asks this Court to find that "Rule 600 runs from the filing date of a first complaint unless the Commonwealth demonstrates that it exercised due diligence throughout the prosecution of the two complaints, which also focuses on the period of delay between the filing of the two complaints."  Appellant's Brief at 29.  Turning to the plain language of Rule 600, Appellant argues the rule clearly establishes that due diligence is required to obtain the benefit of prosecution.  He then notes that the Comment to Rule 600 states:

> In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when . . . the Commonwealth has exercised due diligence . . . .

*Id.* at 31 (quoting Pa.R.Crim.P. 600, Comment).[6]  In light of this Comment, Appellant asserts "there is no justifiable reason" that the due diligence standard does not also apply here, where the Commonwealth filed two complaints involving different charges.  *Id*. at 31.  He then explains that this Comment, derived from our decision in *Commonwealth v. Meadius*, 870 A.2d 802 (Pa. 2005), suggests that the Commonwealth must act with due diligence as to the first complaint and demonstrate that its use of an investigating grand jury was reasonable.  *Id.* at 31-32.

With regard to investigating grand juries, Appellant notes the Commonwealth is not required to submit its case to one in order to prosecute.  Nor does any law prevent the prosecutor from withdrawing from one where it is apparent investigation is no longer necessary.  He therefore concludes that requiring the Commonwealth to demonstrate the reasonable necessity of an investigating grand jury would not disturb the prosecutor's authority and would advance the dual purposes of Rule 600, those being "more effectively protect[ing]  the  right  of  criminal  defendants  to  a  speedy  trial,  and  the  efficient

---

[6] This Comment is discussed *infra*, where it is reproduced in its entirety.

administration of justice." *Id.* at 32-33 (quoting *Commonwealth v. Harth*, 252 A.3d 600, 615 (Pa. 2021) (additional quotations omitted)). Appellant asserts that due diligence here would require the Commonwealth to present some evidence to justify his continued detention and the lack of action on his first complaint. *Id.* at 33.

To the extent the Commonwealth asserts due diligence only applies to the second complaint in this case, Appellant maintains we have declined to adopt such a construction. *Id.* at 34 (citing *Meadius*, 870 A.2d at 808-810 (Eakin, J., dissenting)). He argues this approach would allow the Commonwealth to "hide behind the sluggish [investigating grand jury] process – a product of [its own] operation – when the process may not be reasonably necessary to prosecute a particular defendant." *Id.* at 34.

Applying this test, Appellant asserts the Commonwealth failed to exercise due diligence. He maintains the first complaint served no purpose other than keeping him "on ice," knowing the initial complaint would never be pursued while continuing on with the investigating grand jury. He avers the Commonwealth has failed to present any evidence that the grand jury was necessary to shroud its investigation in secrecy or as a prosecutorial tool to investigate him in particular. *Id.* at 37. Appellant recognizes that the record demonstrates Trooper Corl compiled an extensive amount of evidence just prior to and after Appellant's arrest, which served as the "cornerstone of the Commonwealth's case." *Id.* The Commonwealth therefore knew most of what it learned about his involvement shortly after the first complaint was filed. Finally, Appellant suggests the Commonwealth had several courses of action it could have taken that did not involve the first complaint sitting in limbo while it pursued other options. *Id.* at 38. In conclusion, Appellant asks this Court to reverse the Superior Court's decision and find that Rule 600 began running when the first complaint was filed. Because Appellant's trial commenced

more than 365 days after the first complaint was filed and the Commonwealth failed to demonstrate due diligence, dismissal was warranted.

Conversely, the Commonwealth maintains the lower courts applied longstanding speedy trial precedent concerning two complaint cases and reached the correct conclusion that the clock began when it filed the second complaint. It similarly points out that the Comment to Rule 600, which relies on *Meadius*, provides that the speedy trial period begins with the second complaint where the Commonwealth's new filing is "necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600." Commonwealth's Brief at 22 (quoting Pa.R.Crim.P. 600, Comment). In its view, these considerations are especially compelling in cases like this one where the Commonwealth files new charges based upon new evidence.

The Commonwealth then discusses *Simms*, which it purports involved a two-complaint scenario similar to this case. As noted above, the Commonwealth charged Simms with aggravated assault, but following the victim's death, filed a second complaint charging Simms with homicide. This Court concluded that the speedy trial period began to run with the second complaint, considering "events beyond the control of the prosecution [ ] operated to change the nature of the offense for which [the] defendant [was] to be tried." *Id.* (citing *Simms*, 500 A.2d at 802-04). The Commonwealth avers that the difference in charges between the first and second complaint in *Simms* negated any inference that the Commonwealth attempted to circumvent then-Rule 1100, now Rule 600. *Id.* at 22-23. In its view, the critical question instantly is "whether the Commonwealth could have charged the crimes brought in the second complaint at the time of the filing of the first complaint, but instead chose to delay the charges in order to circumvent Rule 600." *Id.* at 23. The Commonwealth asserts that cannot be the case where the second

complaint involves new charges that could not have been filed at the time of the first complaint. *Id.*

The Commonwealth rejects Appellant's assertion "that the Commonwealth knew enough at the time of the first complaint to charge him with all the crimes brought in the second complaint" as factually incorrect, as determined by the trial court, and also irrelevant. *Id.* at 23-24. The Commonwealth explains that any issue concerning delay in bringing the first trial is a moot point because that case was dismissed under Rule 600, and any delay in bringing the second case is a non-issue because Rule 600 does not begin until charges are brought. It goes on to explain that much of what was charged in the second complaint was not known when the first complaint was filed. *Id.* at 25-30 (citing Trial Ct. Op., 4/21/21, at 32-34).

The Commonwealth disagrees with Appellant's claim that it "nefariously used the first complaint as a 'placeholder' to keep him 'on ice' during the subsequent investigation." *Id.* at 30. It maintains it could not have known what evidence it would uncover from its investigation, which is the point of investigations. The Commonwealth goes on to explain that its investigation "produced over 20 new witnesses and revealed that [Appellant] was not the bit player he appeared to be when the charges were filed. He was a leading member of a sophisticated trafficking ring consisting of more than 30 other conspirators." *Id.* at 31. The Commonwealth acknowledges that it should have withdrawn the first complaint sooner after realizing the subsequent investigation produced significant evidence, but nonetheless points out that Appellant "received relief on those original charges, and sentencing credit for all the time he served on them." *Id.* In light of the foregoing, the Commonwealth asks us to affirm the Superior Court's order denying relief.[7]

---

[7] Appellant's reply brief reiterates many of the same points addressed in his principal brief. *See generally* Appellant's Reply Brief.

IV. Analysis

Our standard of review in evaluating speedy trial issues is "whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Wholaver*, 989 A.2d 883, 899 (Pa. 2010) (citing *Meadius*, 870 A.2d at 805). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." *Commonwealth v. Bradford*, 46 A.3d 693, 700 (Pa. 2012) (citation omitted)).

This Court has previously explained that Rule 600 was adopted in order "to protect defendants' constitutional rights to a speedy trial under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, in response to the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514 (1972). *Id.* at 701 (citation omitted). We have also recognized that "Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution in criminal cases." *Id.* (citations omitted). "In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it." *Simms*, 500 A.2d at 805 (quoting *Commonwealth v. Johnson*, 409 A.2d 308, 311 n.4 (Pa. 1979)).

Turning to its text, Rule 600 requires that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Rule 600 further provides:

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has

failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

. . .

**(D) Remedies**

(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600(C)(1)-(D)(1).

Rule 600 does not explicitly address the way in which two-complaint scenarios should be handled, and this Court has had minimal opportunity to examine the rule in that context. The most recent case addressing such a scenario is *Meadius*. There, the Commonwealth filed a criminal complaint charging Meadius with several offenses, including forgery and insurance fraud on January 16, 2001. *Meadius*, 870 A.2d at 803. The Commonwealth was unable to proceed with the preliminary hearing on three occasions for various reasons and ultimately withdrew the complaint. *Id.* On March 27, 2001, after receiving assurances from various witnesses concerning their ability to testify at a future preliminary hearing, the Commonwealth filed a second complaint alleging the identical offenses. *Id.* Meadius was scheduled to proceed to trial on February 4, 2002, which would have been more than one year after the first complaint, but not the second complaint, was filed. *Id.* Meadius moved to dismiss the charges with prejudice under Rule 600, asserting the Commonwealth failed to bring him to trial within the period of time required by law. *Id.* at 803-04.

The trial court granted Meadius' motion to dismiss, reasoning the Commonwealth failed to comply with Rule 600. Because the Commonwealth failed to bring Meadius to

trial within one year of filing the first complaint, it was not entitled to the benefit of the filing date of the second identical complaint. *Id.* at 804. In doing so, the trial court rejected the Commonwealth's argument that the case was controlled by *Commonwealth v. Whiting*, 500 A.2d 806 (Pa. 1985). In *Whiting*, the Commonwealth sought dismissal of its case at the preliminary hearing and filed an identical second complaint almost one year later. This Court calculated the speedy trial period from the filing date of the second complaint, finding the record did not demonstrate any effort by the Commonwealth to evade or manipulate the speedy trial period. *Id.* (citing *Whiting*, 500 A.2d at 806-808). The trial court in *Meadius* distinguished *Whiting* on the basis that *Whiting* involved "dismissal by an impartial magistrate, not withdrawal of charges by executive action." *Id.* at 804. It instead found applicable the two-part test set forth in *Commonwealth v. Sires*, 424 A.2d 1386 (Pa. 1981). There, this Court found that the speedy trial period begins with the second complaint where: "(1) the first complaint was properly dismissed by a competent judicial authority; and (2) the record does not reveal any prosecutorial attempt to circumvent or evade the rule's mandate." *Id.* at 804 (citing *Sires*, 424 A.2d at 1387). Finding neither prong met, the trial court granted Meadius' motion to dismiss. The Superior Court reversed, applying *Whiting*. It viewed *Whiting* more broadly than the trial court, emphasizing the fact that "the initial complaint in *Whiting* was dismissed on the Commonwealth's motion without independent review by the district magistrate, thus prompting this Court to deem it 'a voluntary withdrawal of the prosecution by the Commonwealth.'" *Id.* at 804 (citation omitted). The Superior Court also found the Commonwealth had not attempted to circumvent or manipulate Rule 600. *Id.* at 804-05.

On appeal, the *Meadius* Court first examined the text of Rule 600 and noted its plain language makes clear that a trial court must grant a Rule 600 motion "unless it finds the Commonwealth has exercised due diligence and that the circumstances occasioning

the postponement were beyond its control." *Id.* at 805. We acknowledged that previous case law, particularly *Whiting*, provided some support for the position that such Rule 600 matters should be disposed of based solely on whether the Commonwealth attempted to evade or manipulate the speedy trial requirements. *Id.* at 806 (citing *Whiting*, 500 A.2d at 808). We explained, however, that *Whiting* "did not consider a scenario where the Commonwealth's failure to act diligently precipitates a withdrawal of the complaint followed by a re-filing of identical charges." *Id.* at 807. In addition to considering the Commonwealth's intent to evade or manipulate Rule 600, the *Meadius* Court believed the appropriate test should also consider the Commonwealth's exercise of due diligence, explaining:

> **The rule's focus upon allowing the prosecution time extensions only where it has acted diligently and where the delays in question were caused by factors beyond its control supports an interpretation whereby it must forego the benefit of a second filing date when these conditions are not met.** Indeed, a contrary result would undermine the rule's own facial requirements directed to prosecutorial diligence, as well its objectives, which include advancing society's interest in seeing those accused of crime prosecuted in a timely manner, as well as ensuring the efficient management of criminal cases as a means of avoiding substantial backlogs[.]

*Id.* at 808 (internal citations omitted) (emphasis added). Applying this standard, in light of the trial court's findings, the *Meadius* Court found the Commonwealth failed to proceed with due diligence in bringing Meadius to trial in the required time period. It therefore reversed the Superior Court's decision and reinstated that of the trial court. *Id.*

Though the specific provision of Rule 600 at issue in *Meadius* is no longer present in the current version of the rule, Rule 600(C)(1) imposes a due diligence requirement on the Commonwealth. Additionally, the test developed in *Meadius* appears in the Comments of the current version of Rule 600 and continues to be applied to cases involving two-complaint scenarios. That Comment states:

> In cases in which the Commonwealth files a criminal complaint, withdraws that complaint, and files a second complaint, the Commonwealth will be afforded the benefit of the date of the filing of the second complaint for purposes of calculating the time for trial when the withdrawal and re-filing of charges are necessitated by factors beyond its control, the Commonwealth has exercised due diligence, and the refiling is not an attempt to circumvent the time limitation of Rule 600. *See Commonwealth v. Meadius*, 582 Pa. 174, 870 A.2d 802 (2005).

*See* Pa.R.Crim.P. 600, Comment.

We find the *Meadius* test applicable herein, as it seeks to reach a balance between the twin aims of Rule 600. We first address due diligence. This Court has explained that it is the Commonwealth's burden to demonstrate due diligence by a preponderance of the evidence to avail itself of an exclusion under Rule 600. *See Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010). Perhaps most importantly, this Court has recognized that "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Id.* In the context of *Meadius*, and other similar two-complaint cases, the due diligence inquiry relates to whether the Commonwealth's basis for filing the second complaint was precipitated by its lack of diligence in prosecuting the first complaint. *Meadius*, 870 A.2d at 807. That is because, more often than not, two-complaint cases involve a situation where the Commonwealth re-files an identical complaint due to some barrier in prosecuting its initial complaint. When the Commonwealth fails to exercise diligence with respect to the first complaint, it does not receive the benefit of the filing date of the second identical complaint.

Here, the Commonwealth's filing of the second complaint cannot be attributed to a lack of diligence in prosecuting the first complaint, but is directly tied to its need for further investigation after discovering that Appellant's drug enterprise extended beyond the jurisdiction of Huntingdon County. The relevant period of time for due diligence purposes under the unique facts of this case therefore becomes the period of time

between the filing of the first and second complaint. Here, the Commonwealth's undertaking of grand jury proceedings can only be understood as an exercise of due diligence. As mentioned previously, the OAG's grand jury investigation was necessitated by the revelation the Appellant's criminal conduct extended beyond Huntington County and throughout the Commonwealth. The OAG's investigation began almost immediately after learning additional information that grand jury proceedings would be necessary, and the second complaint was filed promptly after the conclusion of those proceedings. Although the Commonwealth concedes it could have withdrawn the first complaint while the investigation occurred, Appellant's Rule 600 challenge to the first complaint resulted in dismissal of that complaint. Dismissal of the second complaint, however, is clearly not the proper remedy. Appellant's retrospective focus on the result of the grand jury proceedings also misconstrues the due diligence inquiry, as due diligence is not outcome based but rather an assessment of the Commonwealth's affirmative actions. *See Selenski*, 994 A.2d at 1089. Nevertheless, it is clear the Commonwealth's grand jury investigation bore fruit in the form of additional charges against Appellant that were not, and could not have been, included in the Commonwealth's initial complaint. *See* Trial Ct. Op., 4/21/21, at 32-35. We reject Appellant's argument to the contrary as unsupported by the record. *See Wholaver*, 989 A.2d at 809; *Bradford*, 46 A.3d at 700.[8]

---

[8] In his concurring opinion, Justice Wecht initially expresses hesitation with our decision not to "engage independently in the close, record-based inspection of the charges that is required in a case like this[,]" but ultimately agrees with our decision to do so given the thoroughness of the trial court's opinion. Wecht, J., Concurring at 12-13. To be clear, our reliance on the trial court's analysis in this case rests not only on the fact that the trial court's opinion was indeed extremely thorough, but also on the standard of review being an abuse of discretion. As such, the trial court's determinations carry a degree of deference. In many cases involving Rule 600, this Court has stressed the consideration owed to the trial court's factual findings and analysis, where supported by the record, in resolving motions for dismissal. *See e.g.*, *Meadius*, 870 A.2d at 808.

We must now address the remaining *Meadius* factors, specifically, whether the Commonwealth's filing of the second complaint was necessitated by factors beyond its control and whether its actions were an attempt to circumvent or manipulate the timing requirements of Rule 600. *Meadius*, 870 A.2d at 808. As to the former, the Commonwealth's filing of the second complaint was the result of becoming aware of additional information after the first complaint was filed. This information was made available only after multiple arrestees came forward with additional information following the execution of the October 6, 2017 search warrant, which ultimately led the Commonwealth to conduct additional investigation through the grand jury process. As such, we conclude the Commonwealth's filing of the second complaint was necessitated by factors beyond its control.

With respect to the final factor, the Commonwealth's filing of the second complaint was not an attempt to manipulate the speedy trial requirements. As noted above, many two-complaint cases involve the re-filing of a second complaint with charges identical to the first complaint. In these cases, the goal is to extend the speedy trial clock where factors came in the way of a speedy prosecution the first time around. In contrast, the second complaint in this case involved some of the same charges from the first complaint but also included additional charges based on information discovered during the grand jury process. The filing of additional charges based on additional information is hardly an attempt to evade the speedy trial requirements, but rather an effort to hold Appellant accountable to the full extent of his criminal activity. We therefore conclude the Commonwealth's filing of the second complaint was not an attempt to manipulate the

speedy trial requirements.  As the Commonwealth has met each of the *Meadius* factors, the Superior Court properly denied Appellant's motion to dismiss.[9]

## V. Conclusion

Where the Commonwealth files two different criminal complaints against a defendant, the Commonwealth receives the benefit of the filing date of the second complaint for Rule 600 purposes where it demonstrates that it acted with due diligence between the period in which the complaints were filed.  The Commonwealth must also establish that the filing of the second complaint was necessitated by factors beyond its control and that its actions were not an attempt to circumvent or manipulate the speedy trial requirements.  Under the specific facts of this case, the Commonwealth has met these requirements.[10]  We therefore affirm the order of the Superior Court denying Appellant's motion to dismiss pursuant to Rule 600.

---

[9] Appellant's argument focuses solely on which complaint controls the starting point of the Rule 600 calculation.  He does not contend that his trial was untimely from the date of the second complaint to the commencement of his trial.  In any event, we agree with the Superior Court that, considering the delays attributable to Appellant and the trial court, Rule 600 was not violated.  *See Womack*,  2022 WL 1284618 at *9.

[10] Justice Donohue authors a concurring opinion disagreeing with our application of the *Meadius* framework.  She explains: "[I]t is only where the second set of charges is part of the same criminal episode as the first set of charges **and** where the evidentiary basis for those charges was available to the Commonwealth at the time the first complaint was filed that the *Meadius* test comes into play."  Donohue, J., Concurring at 3 (emphasis added).  With respect to the former, it is difficult to deny that the charges in both criminal complaints arose from the same underlying drug trafficking incident in a general sense, though much of the information supporting the charges in the second complaint was unknown to the authorities when the first complaint was filed.  We acknowledge that the discovery of new information necessitating the filing of a second complaint does not lend itself to a straightforward application of the *Meadius* test, but nonetheless find its due diligence approach of assessing whether the charges in the second complaint could have been brought with the first is appropriate under the circumstances.  We are hesitant to inject compulsory joinder principles into our analysis here where there is clearly no such issue.  Section 110 details when a subsequent prosecution is barred by a former prosecution for different offenses and only applies where, inter alia, the first prosecution resulted in an acquittal or conviction. *See* 18 Pa.C.S. § 110.  That is not the case herein.

Chief Justice Todd and Justices Dougherty, Wecht and Brobson join the opinion.

Justice Donohue files a concurring opinion.

Justice Wecht files a concurring opinion.

---

Additionally, Section 109 explains when a prosecution is barred by a former prosecution for the same offense and none of the circumstances contained therein apply instantly. *See* 18 Pa.C.S. § 109 (explaining when prosecution barred by former prosecution for same offense). Thus, although the Commonwealth filed two complaints arising from the same conduct, Appellant was never prosecuted for the offenses in the first as contemplated by Sections 109 and 110.